IN THE MATTER OF LORETTA DIANE SHUE

No. 8226DC132

(Filed 5 July 1983)

1. **Infants § 18— juvenile hearings—admissibility of written reports**
   In juvenile dispositional and review hearings, the trial courts may properly consider all written reports and materials submitted in connection with such hearings. G.S. 7A-640; G.S. 7A-657.

2. **Infants § 16— neglected child—review of custody hearing—burden of proof**
   In a hearing to review the custody of a child who had been taken from its mother and placed in the custody of its father because of physical abuse, G.S. 7A-657 permitted custody to be restored to the mother upon showing that the child "will receive proper care and supervision" and that such "placement . . . is deemed to be in the best interest of the [child]." Therefore, the trial court erred in using, in effect, a change of circumstance standard and in requiring the mother to show that it was not in the child's best interest for the child to stay with its father.

3. **Infants § 16— neglected child—review of custody hearing—refusal to hear mother's witnesses**
   In a hearing to review the custody of a child who had been taken from its mother and placed in the custody of its father because of physical abuse, the trial court erred in making its custody decision before hearing all of the evidence tendered by counsel for the mother.

   Judge HEDRICK dissenting.

APPEAL by respondent from *Jones, W. G., Judge.* Order filed 8 September 1981 in District Court, MECKLENBURG County. Heard in the Court of Appeals 7 December 1982.

*Richard F. Harris, III, for respondent appellant.*

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski, for appellee Mecklenburg County Department of Social Services.*

*W. Thomas Ray, Guardian Ad Litem for Loretta Diane Shue, Minor.*

BECTON, Judge.

This case involves a "neglected child" as defined by N.C. Gen. Stat. § 7A-278(4) (1979), *repealed by* 1979 N.C. Sess. Laws c. 815 § 1, *replaced by* N.C. Gen. Stat. § 7A-517(22) (1981). Following an adjudicatory hearing in October 1979 and dispositional hearings in December 1979 and February 1980, a review hearing was held on 8 June 1981 in the Mecklenburg County District Court. After hearing evidence and after considering psychiatric evaluation reports and home studies done by the Mecklenburg County Department of Social Services (DSS), the trial court entered an order granting custody of the child to Roy Shue, the child's father. The mother, Omega Lee James, appeals from the order granting custody to Roy Shue.

I

Procedural History

On 20 September 1979, DSS filed a juvenile petition alleging physical abuse of Loretta Shue, age three years. Following an adjudicatory hearing on 22 October 1979, the trial court determined that Loretta had suffered a nearly fatal head injury which was not an accident but was the result of an assault upon the child by either the mother or the mother's boyfriend. The trial court granted DSS custody pending final disposition.

On 7 November 1979, Roy Shue filed a motion in which he acknowledged that he was the natural father of Loretta and requested that he be given custody of the child. At the first dispositional hearing on 28 December 1979, the evidence disclosed that Roy and Marilyn Shue were married in 1967. It was the second marriage for both. Mrs. Shue had three children by a previous marriage, one of whom is Omega Lee, the mother of Loretta. In April or May 1975, the Shues separated; they reconciled in June 1978 and have lived together since that time. During the time they were separated, Omega lived with Mr. Shue who fathered her child, Loretta. Upon hearing this and other evidence, the trial court ordered that psychological evaluations be done of Mr. and Mrs. Shue, and that custody remain with DSS.

The second dispositional hearing was concluded on 8 February 1980, and the trial court entered an order directing that DSS retain legal custody of the child, but ordering trial placement

for a year with Mr. and Mrs. Shue. At a review hearing on 8 June 1981, the trial court considered psychiatric evaluation reports and home studies done by DSS of the father's household and the mother's household, both of which recommended that custody remain with the father since the child had adjusted well and it was important that the child have stability in her life. The trial court then stated that, unless the mother could prove that the child was not being properly cared for by the Shues, it would be in the child's best interest to remain where she had lived for a year and a half. Counsel for the mother moved for a mistrial on the grounds that the trial court had formed an opinion without hearing all the evidence. The court, however, denied the motion and, without hearing all of the evidence tendered by counsel for the mother, entered an order granting custody of the child to the father. The mother was given liberal visitation rights.

## II

### Analysis

Although the mother-appellant makes 29 separate arguments on appeal, the essential, ultimate and dispositive issue to be resolved is whether the trial court erroneously awarded custody of the minor child to Roy Shue, who acknowledged that he was the child's father. To resolve that issue, we must consider some of the assignments of error relating to evidentiary matters, conclusions of law, and the denial of the mother's motion for mistrial. Because we hold that the trial court imposed an erroneous burden of proof on the mother and further erred by not considering all of the evidence in determining what was in the best interest of the child, it is not necessary to address all of the remaining assignments of error.

### A. Evidentiary Matters and Burden of Proof

Contending that the trial court had no evidentiary basis to support its order awarding custody to Roy Shue, the mother specifically argues the following:

(i) The trial court erred in its reliance upon DSS reports because the reports contained hearsay and other objectionable matters and afforded the mother no real opportunity to cross examine one of the witnesses who prepared one of the reports;

(ii) The trial court erred in requiring the mother to show that the father had either abused or was not appropriately caring for the child during the trial placement before the court would consider returning the child to the custody of its mother;

(iii) The trial court erroneously excluded evidence of the mother's changed circumstances which would have shown that the child could have received proper care and supervision in her home.

We consider the mother's arguments *seriatim.*

1. Non-testimonial evidence.

[1] The written reports of social workers and psychiatrists, and other written material in the court's file are competent evidence in a dispositional or review hearing in juvenile cases. N.C. Gen. Stat. § 7A-640 (1981) states: "The *dispositional hearing* may be informal, and the judge may consider written reports or other evidence concerning the needs of the juvenile." (Emphasis added.) With regard to *review hearings,* N.C. Gen. Stat. § 7A-657 (1981) is even more specific: "The court shall consider information from the Department of Social Services; the juvenile court counselor, the custodian, guardian, the parent or the person standing in loco parentis, the foster-parent, the guardian ad litem; and any public or private agency which will aid it in its review." The statutes lead to but one conclusion: In juvenile proceedings, trial courts may properly consider all written reports and materials submitted in connection with said proceedings.

2. Applicable standard and burden of proof under G.S. § 7A-657.

[2] (a) Under the review hearing statute, G.S. § 7A-657, the trial court in this case was required to determine whether the child, previously adjudged neglected by the mother, should remain in the custody of her father, or whether the child should be placed elsewhere "as is deemed to be in the best interest of the [child]." G.S. § 7A-657(7). The trial court erred by using, in effect, a change of circumstance standard and by requiring the mother to show that it was not in the child's best interest for the child to stay with the father. Interestingly enough, the trial court did not intend, initially, to place such a burden on the mother.

In scheduling the review hearing for 8 June 1981, Judge W. H. Bennett, Jr., by order dated 27 April 1981, stated:

(4) That the primary burden of proof, initially, paticularly because of the past history and custodial determinations in this case, shall lie with Mrs. Omega Lee James, but there shall also rest with all of the parties, including Roy Eugene Shue, the burden of proof to show the court hearing this case what is in the "best interests" of the child, with reference to custody, as more particularly set forth in G.S. § 7A-657. This court understands the key question or criterion to be, "what is in the best interests of the minor child," with reference to custody, rather than any party having the burden of showing that there has or has not been a material or substantial change in circumstances, in order to determine where custody shall be placed, whether in Roy Eugene Shue and his family, or in Mrs. Omega Lee James and her family, or some third party.

During the course of the 8 June 1981 review hearing, however, the presiding judge, William Jones, stated:

Although the standard is what's in the best interest of the child, and I intend for that to be the standard on which the decision is based, that I would request and instruct even, that all of you focus on the issues in this case as if we were trying a change of custody case, which is to say focus on things which have changed since the entry of the last order . . . placing physical custody of Loretta with her father and her grandmother.

The trial court, before hearing all the evidence, determined that the mother did not, and could not, carry this burden of proof and terminated her custody rights and its jurisdiction.

N.C. Gen. Stat. § 7A-657 contemplates that a child will be returned to the parent from whose custody it was taken *if* the trial court finds sufficient facts to show that the child will receive proper care and supervision from that parent. The quintessential purpose of reuniting child and parent is not inconsistent, however, with custody being placed in the father in this case. Removal from one parent to another parent, simply put, does not

fit neatly into the language in the first paragraph of the statute.[1] Consequently, we must stress the significance of that portion of G.S. § 7A-657 requiring the trial court "[t]o enter an order continuing the placement under review or providing for a different placement *as is deemed to be in the best interest of the [child]."* [Emphasis added.] We must also consider the purposes of the juvenile code and the broader, more flexible, provisions of N.C. Gen. Stat. § 7A-647 (1981), dealing with dispositional alternatives for neglected children. After all, N.C. Gen. Stat. § 7A-516 (1981) provides: "This Article shall be interpreted and construed so as to implement the following purposes and policies:

. . . .

(3) To develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the child, the strengths and weaknesses of the family, and the protection of the public safety.

The common thread, then, running throughout the juvenile code is that the court must consider the child's best interests in making all placements whether at the dispositional hearing or the review hearing.

(b) The consensus of all the professionals involved in the case *sub judice* was that the child's greatest need was for stability and trust, which had been provided in the household of the father during the year and a half prior to the review hearing. It is not surprising, then, that the trial court felt, nothing else appearing, that the child's secure environment should not be disrupted and that the child should remain in the custody of her father.

The evidence of the strong emotional bonding between the father and child is critically important. It is not, however, determinative. It is but one factor the trial court must consider in determining what is in the best interest of the child. Simply put, the court erred when it said: "unless Mrs. James is able to prove that [Loretta] is being inappropriately cared for by the Shues,

---

1. G.S. § 7A-657 states: "In any case where the judge removes custody from a parent or person standing in loco parentis because of dependency, neglect or abuse, the juvenile shall not be returned to the parent or person standing in loco parentis unless the judge finds sufficient facts to show that the juvenile will receive proper care and supervision."

. . . it would be in Loretta's best interests to remain with them because that is where she's lived for the last year and a half. . . ." It was inappropriate for the trial court, after considering psychiatric evaluations and other testimony from DSS professionals, and without hearing all of the mother's evidence, to conclude that it was in the best interests of the child for her to stay with her father and to require the mother to show that it was *not* in the best interest of the child for her to stay with her father.

The burden placed on the mother — to prove a negative — is almost impossible as a practical matter, and more than G.S. § 7A-657 requires as a legal matter. So, we state the principle applicable to this case. In order to have custody restored to her, G.S. § 7A-657 requires the mother to show only that the child "will receive proper care and supervision" *and* that such "placement . . . is deemed to be in the best interest of the [child]." Consequently, evidence of the mother's own changed circumstances and evidence that the child's welfare is being adversely affected by the child's present environment are both factors in the equation.

3. Refusal to allow the mother's witnesses to testify.

[3] Although the trial court commendably sought to assuage the anticipated wrath of several witnesses who had come to court but were not allowed to testify,[2] the trial court erred in two additional related ways.

---

2. JUDGE: Let me ask you then to bring everybody in and I'll tell them what I'm trying to do.

(All witnesses return to the courtroom.)

JUDGE: While you folks were waiting impatiently I'm sure, we have taken some testimony and talked primarily about where we are in this case procedually [sic] at this point. And what I have decided to do is to leave Loretta where she is with the Shues, to relieve the Department of her custody, and to vest her custody with Mr. Shue, and I have decided to do that without hearing your testimony, not because I don't care about how Omega and her new husband have adjusted to life in South Carolina and not because I don't care about the quality of their relationship with [Loretta] and not because I think you shouldn't have the opportunity at some point to say what you know about those things in her behalf in court. But because the purpose of this proceeding, as I [e]nvision it, is not to have a custody hearing to decide whether Loretta ought to be placed with her father or with her mother, but rather to decide whether she should continue to stay where she is with one of her parents or whether she should be placed elsewhere, and it's my decision based on

First, the trial court changed the rules during the middle of the game. Six weeks before the review hearing, during which time the mother presumably gathered evidence (and "lined up" witnesses) she deemed important, the trial court, by order dated 27 April 1981, stated that the "key question or criterion [is] 'what is in the best interests of the minor child' . . . rather than any party having the burden of showing that there has or has not been a material or substantial change in circumstances, in order to determine where custody shall be placed. . . ." During the review hearing, the trial court changed its mind and required the mother to prove that it was not in the best interest of the child to stay with the father. The mother was, thus, prejudicially lulled into coming to court on one theory and having to proceed on another. The trial court erred when it refused to hear testimony from the mother's witnesses about the quality of the relationship between the child and mother.

Second, several of the witnesses, whose testimony was read into the record after the trial judge left the courtroom, gave testimony tending, arguably, to show that the father was not appropriately caring for the child. By way of example, the following facts and inferences can be drawn from the excluded evidence:

---

what I've heard and the evidence that's been offered on that point that she's receiving appropriate care where she is and that she should continue to stay there as far as this proceeding is concerned.

Now as I interpret the law, that does not preclude Mrs. James from filing an action in another court asking for custody of the child. Neither would Mr. Shue be precluded from filing a similar action if I had decided to place Loretta with her mother. Now, I don't expect that to make a lot of sense. I'm not sure it makes a lot of sense to me, and I don't expect it to be very comforting, particularly to you Mrs. James. Now, I understand your hostile feelings toward me and toward this whole process. I don't take any comfort in making decisions that affect children and that hurt parents, but I also feel we wouldn't be here if Loretta had not been seriously injured at one point while she was in your custody. We would not be here in fact if that hadn't happened, so I don't assume all the responsibility for this situation. I will think more carefully about what I want the Order to say, and will call those of you and ask you to prepare the Order. I thank you for coming, those of you who have come from some distance to be witnesses and have taken off work and I apologize to you for, in effect depriving you of the opportunity to testify and I can't explain why, any better than I've explained it, and I hope that makes sense to you, if it doesn't, I'm sorry about that too. Thank you.

1. That the child still wets the bed at night and is never bathed by the Shues—"I don't get but one [bath] a week when my mama comes and gets me."

2. That the child does not want to return to the Shues after being with the mother on weekends—"She gets real quiet and she says, 'Mama, take me home with you. I don't want to go back in there.'"

3. That the child is always hungry when her mother picks her up.

4. That the child is always dirty and wears the same dirty clothes when her mother picks her up.

5. That with the Shues, the child is not learning games that a child would learn—"Until the first time that she had been in Gaffney, she had never seen a jump rope, jacks, or anything like that."

6. That the child watches television a lot including horror movies late at night.

7. That a boy named Michael at the baby-sitter's house always picks on, and punishes, the child.

8. That the mother had to take the child to the hospital because the Shues apparently did nothing about a bad yeast infection which the child had.

9. That the child on one occasion had visible belt marks on her from a spanking administered by the Shues a day earlier.

Although the trial court may not have given credence to the testimony of all of the mother's witnesses, the trial court was, nevertheless, required to consider it *before* determining what was in the best interest of the child.

No rule of law requires the fact finder to believe evidence of experts and not to consider evidence from other witnesses. The trial court erred by making its custody decision before hearing all of the evidence tendered by counsel for the mother.

In re Shue

### III

It is not necessary to discuss the mother's remaining assignments of error. For the reasons stated, the trial court's order granting custody to the father is reversed and this matter is remanded to the District Court for a new review hearing.

Reversed and remanded.

Judge WEBB concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

While the trial judge may have erred in some of his rulings with respect to the admission or exclusion of evidence, and in particular in not hearing certain witnesses, I am not prepared to agree with the majority that the appellant was prejudiced to such an extent that there should be another hearing. The facts found by the trial judge are supported by competent evidence in the record, and these findings support the conclusions drawn therefrom, and these conclusions support the order entered.

I vote to affirm.