IN THE MATTER OF: LORETTA DIANE SHUE

No. 366A83

(Filed 28 August 1984)

**1. Infants § 6— review hearing of temporary placement of child—return of child to parent**

G.S. 7A-657 contemplates that a child may be returned to the parent(s) from whose custody it was taken if the trial court finds sufficient facts to show that the child will receive proper care and supervision from the parent(s) and that such placement is deemed to be in the best interest of the child.

**2. Infants § 6— review hearing of temporary placement—erroneous use of change of circumstances standard**

In a review hearing of a temporary placement of a neglected child with her father after custody was removed from the mother, the trial court erred in using a "change of circumstances" standard and in requiring the mother to show that the child was being inappropriately cared for by the father before custody would be returned to her.

**3. Infants § 6— review hearing of temporary placement—failure to hear relevant testimony**

In a review hearing of a temporary placement of a neglected child with her father after custody was removed from the mother, the trial court erred in failing to hear and consider the testimony of various witnesses tendered by the mother which tended to disclose relevant facts concerning the mother's changed circumstances and the care or lack of care which the father and his wife were then providing for the child.

**4. Infants § 6— review hearing of temporary placement—no authority to award permanent custody or terminate jurisdiction**

In a review hearing of a temporary placement of a neglected child with her father after custody was removed from the mother, the trial court did not have authority to make an award of permanent custody where the father did not file a motion in the cause pursuant to G.S. 50-13.1 seeking custody of the child. Nor did the trial court have authority to terminate its jurisdiction over the case where the child had not reached her eighteenth birthday, no person or agency claiming the right of custody made a motion in the cause seeking custody pursuant to G.S. 50-13.1, and custody of the child was not restored to the parent from whom custody was taken. G.S. 7A-647, -657.

Justice MEYER concurring in result.

APPEAL of right, pursuant to G.S. 7A-30(2), by the Mecklenburg County Department of Social Services and the guardian *ad litem* from the decision of the majority panel of the Court of Appeals, 63 N.C. App. 76, 303 S.E. 2d 636 (1983), reversing the Order of *Judge William G. Jones*, entered on 8 September 1981, in Dis-

trict Court, MECKLENBURG County. Heard in the Supreme Court 6 October 1983.

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski, for Mecklenburg County Department of Social Services, petitioner-appellant.*

*W. Thomas Ray, Guardian ad Litem, for Loretta Diane Shue, a minor.*

*Richard F. Harris, III, for Omega Lee James, respondent-appellee.*

FRYE, Justice.

In this case the two dispositive issues on appeal relate to the review hearing which was conducted by the trial court on 8 June 1981. The dispositive issues are whether the trial court erred by imposing an erroneous burden of proof on the mother, Omega Lee James, in her effort to regain custody of her child, Loretta Shue, and whether the trial court erred in awarding custody of Loretta Shue to Roy Shue without hearing the testimony of various witnesses who were tendered to the trial court by Omega Lee James. The Court of Appeals concluded that the trial court had erred in both respects. After carefully reviewing the record and the applicable statutes, we find that the result reached by the majority panel of the Court of Appeals was correct; however, we modify that opinion in some respects.

On 20 September 1979, the Mecklenburg County Department of Social Services (hereinafter "DSS") filed a juvenile petition in the District Court, Mecklenburg County, alleging that Loretta Diane Shue, three years of age, was a "dependent child" as defined by G.S. 7A-278(3) (1969),[1] or in the alternative, that she was a "neglected child" as defined by G.S. 7A-278(4) (1969).[2] One of the facts relied upon by DSS to support the filing of the juvenile petition was that on or about June 1979, in response to a referral

---

1. G.S. 7A-278(3) (1969) was repealed by the 1979 N.C. Sess. Laws c. 815 § 1, and has been replaced by G.S. 7A-517(13) (1981). Throughout this opinion, we shall refer to the new statutory provisions of the North Carolina Juvenile Code.

2. G.S. 7A-278(4) (1969) was repealed by the 1979 N.C. Sess. Laws c. 815 § 1, and has been replaced by G.S. 7A-517(21) (1981).

from other sources, DSS discovered that Loretta Shue had "sustained serious and extensive bruises on the front of her abdomen, left side and buttocks." At that time, the mother, Omega Lee,[3] explained that the child had been dropped over a hamper by her boyfriend, Tommy Boatwright. Another fact relied upon by DSS was that on 15 September 1979, Loretta Shue was admitted to Presbyterian Hospital "in an unconscious state with a black eye and was diagnosed as having a concussion and a possible bruised kidney." On this occasion, the mother stated that the child was injured when she fell out of her bed. Based upon information and belief, DSS opined that the injuries sustained by the child "were the result of either a failure to supervise or actual physical abuse of the child."

After the presentation of evidence at an adjudicatory hearing conducted on 26 September 1979 and 8 October 1979, the trial court, Judge William G. Jones presiding, determined that the head injury suffered by Loretta Shue on 15 September 1979 was not the result of an accident. Instead, Judge Jones concluded that the injuries were the result of an assault on the child by either the mother or the mother's boyfriend. Thereafter, the trial court adjudged Loretta Shue a "neglected child," and DSS was awarded temporary custody of Loretta Shue. DSS also was requested to submit to the trial court a plan "and alternative plans" for "permanent placement of Loretta Diane Shue."

Subsequently, on 7 November 1979, Roger (hereinafter "Roy") Eugene Shue filed a motion with the trial court in which he stated that he was the natural father of Loretta Shue. Additionally, he stated that it was in the best interest of Loretta Shue that she be placed in his care, custody and control.

At a dispositional hearing conducted on 8 November 1979, DSS submitted to the trial court, Judge William G. Jones presiding, a plan outlining the specific areas which had to be addressed in order for Loretta Shue to be returned to her mother's custody. At this hearing, the trial court also determined the respective amounts of child support to be paid to DSS by Omega

---

3. At the time the initial petition was filed by DSS, the mother's name was Omega Lee. However, since that time the mother has married and her name is Omega Lee James. The usage of either name in this opinion shall refer exclusively to the mother of Loretta Shue.

Lee and Roy Shue. Additionally, psychological evaluations of Roy Shue, his wife, Marilyn Shue, and Omega Lee were ordered. If deemed appropriate by the psychiatrist, Loretta Shue was also to be examined.

On 28 December 1979 another dispositional hearing was held. At this hearing, the evidence disclosed that Roy and Marilyn Shue were married in February 1967. It was the second marriage for both. Mrs. Shue had three children from a previous marriage, one of whom is Omega Lee, the mother of Loretta Shue. In April or May 1975, Roy and Marilyn Shue separated. In June 1978, the Shues reconciled and re-established their marriage. They have lived together since that time. During the time that Roy and Marilyn Shue were separated, Omega Lee continued to live with Roy Shue. It was during this interval that Roy Shue fathered Omega's child, Loretta. After hearing the above evidence and other evidence, the trial court noted that the psychological evaluations of Mr. and Mrs. Roy Shue failed to answer several questions which it considered crucial in order to make a final disposition. Therefore, the trial court ordered that certain specific questions had to be answered by the psychiatrist before any disposition could be made. Custody of Loretta Shue was ordered to remain with DSS.

On 8 February 1980, at the conclusion of the dispositional hearing, the trial court, Judge William G. Jones presiding, entered a Dispositional Order directing that DSS retain legal custody of the child but further directing that Loretta Shue shall "be placed in trial placement with Mr. & Mrs. Roy Eugene Shue," for one year. Visitation rights were granted to the mother.

At the review hearing held on 8 June 1981, the trial court considered various psychiatric evaluation reports and home studies done by DSS of the putative father's household and the mother's new household, which was set up after her marriage. Both studies recommended that custody of Loretta Shue remain with her father since she had adjusted well and it was important that she have stability in her life. However, after considering the above evidence and listening to the testimony of Omega Lee James, Roy Shue, and Dr. Edward C. Holscher, the psychiatrist who examined Roy and Marilyn Shue and Loretta Shue, the trial court limited Mrs. Omega James to one hour to present additional evidence. Additionally, the trial court stated:

I think that unless Mrs. James is able to prove that Omega [sic] is being inappropriately cared for by the Shues that it would be in Loretta's best interest to remain with them because that's where she's lived for the last year and a half, because she is with one of her natural parents, and because she was removed from Mrs. James's [sic] custody and placed there on account of Mrs. James's [sic] own action or inaction, as the case may be, under circumstances that threatened her child's life.

At that time, the attorney for Mrs. Omega James moved for a mistrial on the ground that the trial court had formed an opinion without hearing all the evidence. This motion was denied by the trial court. Thereafter, without hearing all of the evidence tendered by counsel for Mrs. James, the trial court entered an order granting "full legal and physical care, custody and control" of Loretta Shue to Roy Shue. Mrs. James was given visitation rights.

On appeal, the Court of Appeals held that the trial court erred by using, "in effect, a change of circumstance standard" in the instant case and by "requiring the mother to show that it was not in the child's best interest for the child to stay with the father." The Court of Appeals also held that the trial court erred by making its custody decision before hearing all of the evidence which was tendered by the mother.

Other facts necessary to determine the issues raised on appeal will be incorporated in this opinion.

At the review hearing, which is mandated by G.S. 7A-657 (1981), and which was conducted on 8 June 1981, Mrs. Omega James was attempting to present evidence to the trial court which would convince the trial court that it was in the best interest of Loretta Shue that custody be restored to her. After hearing the testimony of Mrs. Omega James and Dr. Edward Holscher, a psychiatrist, the trial court announced an hour recess and stated the following:

COURT: This is a Review hearing, and I have read and considered the report prepared by Dr. Holscher and dated on May 28th or whatever it was and that, in addition to that, I've heard testimony from him and he has been examined and

cross-examined by all parties; and that I've heard Mrs. James's [sic] testimony; that I've read the report prepared by Ms. Patterson and dated February, and if I understand correctly that's still the Department's position, and the report attached to that report from the Department of Social Services in Cabarrus County, including the Affidavit by whatever her name was, regarding the marks on the child's buttocks and that I've read the report from the Cherokee County Department of Social Services regarding the James' residence; and that I am willing to have you, Mr. Harris, present whatever evidence you care to present, either through live testimony of witnesses or through your own statements summarizing what their testimony would be; and I'm willing to give an additional hour in which to do that; and, as far as I think the Statute requires me to base the decision I have to make on the best interest of the child, but I want to express the preliminary opinion that I think that unless Mrs. James is able to prove that Omega [sic] is being inappropriately cared for by the Shues that it would be in Loretta's best interest to remain with them because that's where she's lived for the last year and a half, because she is with one of her natural parents, and because she was removed from Mrs. James's [sic] custody and placed there on account of Mrs. James's [sic] own action or inaction, as the case may be, under circumstances that threatened her child's life. I think that I tried to carefully say what I feel about it, and I think that pretty well summarizes my point of view at this point. . . . (inaudible) . . [.] the child's being mistreated by the Shues, I think all the reports, including specifically the report from the Cabarrus County and from Dr. Holscher, indicate that she is receiving appropriate care there. And it's my philosophy that when children are being properly cared for they ought not to be switched or moved, and I guess that's the underlying basis for my opinion. I'm sympathetic to Omega's anger at me and her frustration with this process and yet I can't understand why she doesn't accept some responsibility herself for the situation she finds herself in. That child was in the hospital, and if the doctor's reports are to be believed, in very serious condition. And it happened while she was there, and if she didn't do it, the boyfriend with whom she continued to live through the last hearing did do it

because the evidence, the factual evidence, is just inconsistent with the child falling out of bed. Every doctor and every psychiatrist who have examined that evidence have come to that conclusion that I'm aware of. I don't know, in light of that expression of opinion, Rich, whether you care to go on or not, but if you want to I'm willing for you to; if you don't want to I'm willing to enter an Order now on the basis of what I've heard.

After the trial court had made the above comments, Mr. Harris, counsel for the mother, objected to the trial court's limitation of one hour for additional testimony from the mother and also made a motion for a mistrial. This motion was denied. Thereafter, the trial court stated that it was inclined to leave Loretta Shue in the custody of her father "in the absence of any proof showing that she is not receiving the appropriate care." Then, without hearing the additional testimony of the witnesses which the mother had planned to present at trial, the trial court entered an Order granting custody of Loretta Shue to Roy Shue.

Although both of the dispositive issues in the instant case relate to the review hearing, we consider it appropriate to quote pertinent parts of the statutory provisions of the North Carolina Juvenile Code which are applicable to this case. Those statutes are G.S. §§ 7A-516, -640, -646, -647 and -657 (1981). Those statutes, in pertinent part, respectively provide as follows:

§ 7A-516. Purpose.

This Article shall be interpreted and construed so as to implement the following purposes and policies:

. . . .

(3) To develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the child, the strengths and weaknesses of the family, and the protection of the public safety.

§ 7A-640. Dispositional hearing.

The dispositional hearing may be informal, and the judge may consider written reports or other evidence concerning the needs of the juvenile. The juvenile and his parent, guardian, or custodian shall have an opportunity to present evi-

dence, and they may advise the judge concerning the disposition they believe to be in the best interest of the juvenile. The judge may exclude the public from the hearing unless the juvenile moves that the hearing be open, which motion shall be granted.

§ 7A-646. Purpose.

The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction. If possible, the initial approach should involve working with the juvenile and his family in their own home so that the appropriate community resources may be involved in care, supervision, and treatment according to the needs of the juvenile. Thus, the judge should arrange for appropriate community-level services to be provided to the juvenile and his family in order to strengthen the home situation.

§ 7A-647. Dispositional alternatives for delinquent, undisciplined, abused, neglected, or dependent juvenile.

The following alternatives for disposition shall be available to any judge exercising jurisdiction, and the judge may combine any of the applicable alternatives when he finds such disposition to be in the best interest of the juvenile:

(1) The judge may dismiss the case, or continue the case in order to allow the juvenile, parent, or others to take appropriate action.

(2) In the case of any juvenile who needs more adequate care or supervision or who needs placement, the judge may:

    a. Require that he be supervised in his own home by the Department of Social Services in his county, a court counselor or other personnel as may be available to the court, subject to conditions applicable to the parent or the juvenile as the judge may specify; or

    b. Place him in the custody of a parent, relative, private agency offering placement services, or some other suitable person; or

    c. Place him in the custody of the Department of Social Services in the county of his residence, or in the case

of a juvenile who has legal residence outside the State, in the physical custody of the Department of Social Services in the county where he is found so that agency may return the juvenile to the responsible authorities in his home state. Any department of social services in whose custody or physical custody a juvenile is placed shall have the authority to arrange for and provide medical care as needed for such juvenile.

§ 7A-657. Review of custody order.

In any case where the judge removes custody from a parent or person standing in loco parentis because of dependency, neglect or abuse, the juvenile shall not be returned to the parent or person standing in loco parentis unless the judge finds sufficient facts to show that the juvenile will receive proper care and supervision.

In any case where custody is removed from a parent, the judge shall conduct a review within six months of the date the order was entered, and shall conduct subsequent reviews at least every year thereafter. . . .

The court shall consider information from the Department of Social Services; the juvenile court counselor, the custodian, guardian, the parent or the person standing in loco parentis, the foster-parent, the guardian ad litem; and any public or private agency which will aid it in its review.

In each case the court shall consider the following criteria:

(1) Services which have been offered to reunite the family;

(2) Where the juvenile's return home is unlikely, the efforts which have been made to evaluate or plan for other methods of care;

(3) Goals of the foster care placement and the appropriateness of the foster care plan;

(4) A new foster care plan, if continuation of care is sought, that addresses the role the current foster parent will play in the planning for the juvenile;

(5) Reports on the placements the juvenile has had and any services offered to the juvenile and the parent;

(6) When and if termination of parental rights should be considered;

(7) Any other criteria the court deems necessary.

The judge, after making findings of fact, shall enter an order continuing the placement under review or providing for a different placement as is deemed to be in the best interest of the juvenile. If at any time custody is restored to a parent, the court shall be relieved of the duty to conduct periodic judicial reviews of the placement.

As previously noted, the Court of Appeals held that the trial court had imposed an erroneous burden of proof on the mother, Mrs. Omega James, at the review hearing. In reaching the conclusion that the trial court erred by using "a change of circumstance standard and by requiring the mother to show that it was not in the child's best interest for the child to stay with the father," the majority panel of the Court of Appeals stated the following:

N.C. Gen. Stat. § 7A-657 contemplates that a child will be returned to the parent from whose custody it was taken *if* the trial court finds sufficient facts to show that the child will receive proper care and supervision from that parent. The quintessential purpose of reuniting child and parent is not inconsistent, however, with custody being placed in the father in this case. Removal from one parent to another parent, simply put, does not fit neatly into the language in the first paragraph of the statute. (Footnote omitted.)

. . . .

The burden placed on the mother — to prove a negative — is almost impossible as a practical matter, and more than G.S. § 7A-657 requires as a legal matter. So, we state the principle applicable to this case. In order to have custody restored to her, G.S. § 7A-657 requires the mother to show only that the child "will receive proper care and supervision" *and* that such "placement . . . is deemed to be in the best interest of the [child]." Consequently, evidence of the mother's own changed circumstances and evidence that the child's wel-

fare is being adversely affected by the child's present en-
vironment are both factors in the equation. (Emphases in
original.)

*In re Shue,* 63 N.C. App. 76, 80-82, 303 S.E. 2d 636, 639 (1983).

[1] A careful reading of G.S. 7A-657 along with the other
statutes contained in the Juvenile Code supports the conclusion
reached by the majority panel of the Court of Appeals. However,
we disagree with the following sentence in the majority opinion of
the Court of Appeals: "N.C. Gen. Stat. § 7A-657 contemplates
that a child will be returned to the parent from whose custody it
was taken *if* the trial court finds sufficient facts to show that the
child will receive proper care and supervision from the parent."
*In re Shue,* 63 N.C. App. at 80, 303 S.E. 2d at 639. The correct in-
terpretation of G.S. 7A-657 is that it contemplates that a child
*may* be returned to the parent(s) from whose custody it was taken
if the trial court finds sufficient facts to show that the child "will
receive proper care and supervision" from the parent(s). However,
before custody is restored to that parent, the trial court also
must find that such "placement . . . is deemed to be in the best
interest of the [child]."

It is clear from the statutory framework of the Juvenile Code
that one of the essential aims, if not the essential aim, of the
dispositional hearing and the review hearing is to reunite the par-
ent(s) and the child, after the child has been taken from the custo-
dy of the parent(s). The fact that the eventual return of the child
to the parent(s) is in practice a central focus of the dispositional
hearing and the review hearing is evidenced in this case by a DSS
report entitled, "Disposition Hearing or 30-Day Hearing." In that
report, DSS enumerated the specific areas which had to be ad-
dressed by Ms. Omega Lee before Loretta Shue could be returned
to her custody. After further stating what was expected of Ms.
Omega Lee, DSS stated that the primary plan for Loretta Shue
was as follows:

VI. Primary plan for child: Eventual return of Loretta to Ms.
Omega Lee once Ms. Lee has met the conditions stated
above and any other changes that may occur in the fu-
ture.

However, in spite of the contents of the above report and in
spite of the fact that the trial court knew that "the best interest

of the child" was the "polar star" by which its final decision was to be made, the trial court erroneously employed a change of circumstance standard upon the review hearing, and additionally, the trial court erroneously imposed upon the mother the burden of proving that Loretta Shue was being inappropriately cared for by Roy and Marilyn Shue. Although not explicitly stated in the majority opinion of the Court of Appeals, the statutory language of G.S. 7A-640 and G.S. 7A-657 does not place any burden of proof upon either the parent(s) or DSS during the dispositional hearing or the review hearing. The essential requirement, at the dispositional hearing and the review hearing, is that sufficient evidence be presented to the trial court so that it can determine what is in the best interest of the child.

In determining the best interest of the child, the trial court should consider a number of factors, too numerous to be named here. However, those factors would include the changed circumstances of the mother's environment and the type of care which the Shues are providing for Loretta Shue. Nevertheless, neither of the above factors would necessarily be controlling nor determinative of the best interest of Loretta Shue.

[2] Whenever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony. Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child. In view of the foregoing, it is clear that the trial court erred by trying this case as a change of circumstance case and by requiring the mother to show that Loretta Shue was being inappropriately cared for by the Shues before custody of Loretta Shue would be returned to her. The commission of the above errors by the trial court was prejudicial to the mother's case and entitles her to a new review hearing.

[3] Additionally, as held by the majority panel of the Court of Appeals, the trial court erred by not hearing all of the evidence which the mother was prepared to present to the court.[4] This

4. Although we agree with the conclusion reached by the majority opinion of the Court of Appeals finding error in the trial court's failure to hear all of the

evidence consisted of the testimony of several witnesses, some of whom resided in South Carolina, who were prepared to testify on behalf of Mrs. Omega James. Their testimony, which was put into the record after the trial judge had left the bench and had stated his decision concerning the future custody of Loretta Shue, tended to disclose, *inter alia*, relevant facts and circumstances concerning the mother's changed circumstances[5] and the care or lack of care which Roy and Marilyn Shue were then providing for Loretta Shue. Without hearing and considering this evidence (although the trial court was not required to believe this evidence), the trial court could not intelligently decide what was in the best interest of Loretta Shue. In spite of the fact that all of the psychological reports and the reports prepared by various DSS professionals recommended that it was in the best interest of Loretta Shue for her to remain in the custody of her father, Roy Shue, the trial court was still required to hear and consider all of the evidence tendered to the court by the mother which was competent, relevant and non-cumulative. In failing to do so, the trial court committed prejudicial error.

[4]   For the purpose of providing guidance to the trial court upon the rehearing of this case, we note that the trial court entered an Order at the end of the review hearing which stated as follows: "Loretta Diane Shue is hereby placed in the full legal and physical care, custody and control of Roy Eugene Shue." Additionally, the trial court terminated its jurisdiction over this case citing G.S. 7A-524 (1981). The trial court did not have authority to make an award of permanent custody during the review hearing of the *trial placement* of Loretta Shue which was based upon a prior adjudication of neglect. Furthermore, the trial court did not have authority to terminate its jurisdiction over the instant case.

In the case *sub judice*, the trial court was reviewing the *trial placement* of Loretta Shue with her father, Roy Shue, and his

---

evidence tendered by the mother, we note that nothing herein is intended to affect the trial court's authority to exclude incompetent, irrelevant and cumulative evidence.

5. Since the trial placement of Loretta Shue with Roy and Marilyn Shue, the mother had gotten married and had moved into her own home in South Carolina. It was disclosed at oral argument that, sometime after the review hearing, the mother and her husband moved to Charlotte, North Carolina.

wife, Marilyn Shue. In accordance with the explicit language of G.S. 7A-657, the trial court was only authorized to do one of the following: (1) enter an order continuing the placement under review; (2) enter an order providing for a different placement; or (3) restore custody of Loretta Shue to her mother. Regardless of the option chosen by the trial court, the trial court must deem that option to be in the best interest of Loretta Shue. *See* G.S. 7A-657.

The trial court would have been authorized to award custody of Loretta Shue to Roy Shue in this *neglect proceeding* if Roy Shue had filed a motion in the cause pursuant to G.S. 50-13.1 (1976) seeking custody of Loretta Shue. That is so because pursuant to G.S. 7A-523 (Cum. Supp. 1983) the district court has "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be . . . neglected." Additionally, G.S. 7A-524 provides as follows:

§ 7A-524. Retention of jurisdiction.

When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until he reaches his eighteenth birthday. Any juvenile who is under the jurisdiction of the court and commits a criminal offense after his sixteenth birthday is subject to prosecution as an adult. Any juvenile who is transferred to and sentenced by the superior court for a felony offense shall be prosecuted as an adult for all other crimes alleged to have been committed by him while he is under the active supervision of the superior court. Nothing herein shall be construed to divest the court of jurisdiction in abuse, neglect, or dependency proceedings.

Therefore, since the district court has exclusive original jurisdiction over Loretta Shue, a juvenile as defined in G.S. 7A-517(20) (1981), until her eighteenth birthday or until the court legally terminates its jurisdiction over her pursuant to statutory authority, *see* G.S. 7A-524, Roy Shue could have filed a motion in the cause pursuant to G.S. 50-13.1 seeking custody of Loretta. Since Roy Shue had not filed such a motion in the instant case, the district court was not authorized, during the review hearing, to enter an

order making an award of custody, other than a temporary place-
ment pursuant to G.S. 7A-647.

We are not persuaded by the appellants' arguments that G.S.
§§ 7A-640, -646, -647, and -657 should be read together to allow
the trial court to make an award of custody, continue the trial
placement under review, order a new trial placement, or return
the child to the custody of the parent(s) from whom it was taken.
We find G.S. 7A-647, which lists the dispositional alternatives,
and G.S. 7A-657, which delineates the options available to the
trial court in a review hearing of a trial placement, to be control-
ling in this case. During the review hearing of a *trial placement*
pursuant to G.S. 7A-657, the trial court may, in its discretion,
order the implementation of any dispositional alternative listed in
G.S. 7A-647. However, if the trial court does not dismiss the case
or continue the case pursuant to G.S. 7A-647(1), then G.S. 7A-657
limits the trial court's options to entry of an order continuing the
placement, entry of an order providing for a different placement,
or entry of an order restoring custody of the child to the parent(s)
from whom custody was taken, whichever is deemed to be in the
best interest of the child.

We also note that the trial court erroneously terminated its
jurisdiction over Loretta Shue and this case. In view of the facts
of this case which disclosed that: (1) Loretta Shue had not reached
her eighteenth birthday; (2) Neither Roy Shue, Mrs. Omega
James, nor "any other person, agency, organization or institution
claiming the right to custody of [Loretta Shue]" had made a mo-
tion in the cause seeking custody of her, pursuant to G.S. 50-13.1;
and (3) Custody of Loretta Shue was not *restored* to the parent
from whom custody was taken, i.e. Mrs. Omega James,[6] the trial
court was without authority to terminate its jurisdiction over
Loretta Shue in the instant case. *See generally* G.S. 7A-524 and
-657; G.S. 50-13.1. Until the trial court's jurisdiction was properly
terminated pursuant to statutory authority, the trial court was
required by G.S. 7A-657 to conduct periodic reviews of all
*placements* of Loretta Shue.

---

6. G.S. 7A-657 provides as follows: "If at any time custody is restored to a
parent, the court shall be relieved of the duty to conduct periodic judicial reviews
of the placement." If custody had been *restored* to Mrs. Omega James, the trial
court could have, although it was not required to, terminated its jurisdiction over
Loretta Shue and this case.

In conclusion, we hold that the Court of Appeals correctly held that the mother was entitled to a new review hearing because the trial court erred by conducting this hearing as if it were a "change of circumstances" case, by placing an erroneous burden of proof upon the mother, and by failing to hear and consider the testimony of various witnesses which were tendered to the court by the mother. We also hold that the trial court did not have the authority to make an award of custody in this neglect proceeding under the existing facts nor did the trial court have the authority to terminate its jurisdiction over this case. For the errors committed, the mother, Mrs. Omega James, is entitled to a new review hearing.

Upon the rehearing of this case, the trial court is directed that the best interest of the child is the proper standard which governs its decision in this case. The trial court must consider all of the evidence tendered by the respective parties which tends to show what is in the best interest of Loretta Shue, as long as such evidence is relevant, competent and non-cumulative. An award of custody, as distinguished from a *trial placement* of custody of Loretta Shue, may not be made during the review hearing unless Mr. Shue, Mrs. Omega James, or some other person, agency, organization or institution claiming the right to custody of Loretta Shue files a motion in the cause pursuant to G.S. 50-13.1 seeking an award of custody of Loretta Shue and thereafter all of the parties are given sufficient notice of all the determinations which will be made during the review hearing. If such a motion is properly filed with the trial court and allowed by it, and if, at the end of the review hearing, the trial court awards custody to the party who has filed the motion pursuant to G.S. 50-13.1, or if custody of Loretta Shue is restored to her mother, Mrs. Omega James, then the trial court may terminate its jurisdiction over Loretta Shue and this case.

For all of the foregoing reasons, the majority opinion of the Court of Appeals, as herein modified, is affirmed.

Modified and affirmed.

Justice MEYER concurring in result.

I concur in the result reached by the majority. I desire to add the following: The facts of this case represent an unusual and

complex hybrid situation not easily reconciled under either our North Carolina Juvenile Code or under our Domestic Relations statutes. It is a case involving a custody dispute between the two *natural parents* of a *neglected child.* Temporary placements of neglected children are made pursuant to the North Carolina Juvenile Code, particularly G.S. § 7A-516, -640, -646, -647 and -657 (1981). Custody contests between natural parents are determined in a custody proceeding pursuant to G.S. § 50-13.1, *et seq.*

By failing to recognize the unusual nature of the facts so presented, the majority has fashioned a confusing remedy which serves to cloud the distinction between temporary placement proceedings and the Juvenile Code, and custody proceedings between parents.

In order to support its analysis under the North Carolina Juvenile Code, the majority opinion treats the natural father here as if he were a non-parent. The majority's reasoning throughout the opinion is valid only if the father is so treated.

I would submit that the more appropriate approach under these facts would be to admit of an unusual situation and fashion a remedy to meet the exigency.

Here, when the DSS placed temporary custody in the natural father and the father sought permanent custody, the proceeding should have been converted to a Chapter 50 proceeding upon proper notice to the parties. This could have been done upon motion of the father or by the trial judge *ex mero motu.* Or, under G.S. § 7A-657 the trial judge could have perhaps terminated the temporary placement hearings and awarded custody to the father. That statute specifically so provides.