THORNBURG, Judge.
Respondent appeals from a permanency planning review order entered on 6 November 2003.
T.H. and T.H. were born on 7 June 2002 to respondent-father and their mother, who is not a party to this appeal. Because of the mother's prior history with Cabarrus County Department of Social Services (DSS), including the fact that other children had previously been removed from her custody, as well as the fact that she had mental limitations, a DSS social worker visited the hospital on 8 June 2002, shortly after the twins' birth. DSS allowed respondent and the mother to retain custody of the twins because respondent agreed to be the primary caregiver to the twinsand because respondent's parents agreed to be safety responses when the respondent was not able to watch the twins. After leaving the hospital, respondent, the mother and the twins went to live with respondent's parents in their home.
Around 11 November 2002, DSS received another report alleging that the twins were being neglected, including allegations relating to verbal abuse, an unclean living environment, concerns about the twins' health and disputes between the twins' mother and their paternal grandparents. A petition alleging neglect was filed on 27 November 2002. DSS was awarded nonsecure custody of the twins on the same date, but continued placement of the twins with respondent and his parents. However, after a home study was conducted and discussions were held with the twins' pediatrician, the twins were removed from respondent's home on 21 February 2003.
On 7 April 2003, the trial court adjudicated the twins neglected and dependent. The trial court's dispositional order, entered on 24 April 2003, concluded that reunification with respondent was the permanent plan, but the trial court continued custody with DSS. The trial court requested that respondent complete a psychological evaluation, a substance abuse assessment and random drug screenings, anger management assessment and parenting classes.
On 13 June 2003, a review hearing was held, where it was determined that respondent had not received a substance abuse or anger management assessment and the trial court found that respondent had made minimal progress. On 7 August 2003,respondent's progress was again reviewed, and at that time the trial court received a psychological evaluation of respondent which indicated he had a full-scale IQ of 70, one point away from the legal definition of mental retardation. At that point, the trial court ordered that a guardian ad litem be appointed to respondent. The trial court also heard evidence regarding a continuing lack of progress from respondent. The trial court continued custody of the children with DSS and determined that the twins' permanent plan should continue to be reunification with respondent, provided he adequately address the trial court's concerns.
On 6 November 2003, a permanency planning hearing was held. DSS reports indicated that respondent had failed to secure independent housing, had not obtained a driver's license, had failed to submit to random drug screens and had made minimal progress in addressing his problems. The trial court changed the children's permanent plan to adoption. Respondent appeals from the permanency planning review order.
Respondent argues on appeal: (1) that the trial court erred in not appointing a guardian ad litem to respondent prior to the permanency planning review hearing on 6 November 2003; and (2) that the trial court erred in finding that respondent made "minimal progress" in addressing the issues that led to the twins' placement in foster care and not making appropriate findings of fact concerning the permanency planning order under N.C. Gen. Stat. §§ 7B-906 and 907. Respondent argues that the trial court erred in not appointing a guardian ad litem to respondent before the permanency planning review hearing on 6 November 2003. At the prior hearing on 7 August 2003, the trial court first received evidence of respondent's psychological evaluation, which stated that respondent had an I.Q. of 70, one point away from the legal definition of mental retardation. At that point, respondent was appointed a guardian ad litem. Respondent argues that he should have been appointed a guardian ad litem prior to the 7 August 2003 hearing.
N.C. Gen. Stat. § 1A-1, Rule 17(b) requires the appointment of a guardian ad litem for incompetent parties in civil cases. N.C. Gen. Stat. § 1A-1, Rule 17(b) (2003). In addition, this Court has held that:
[I]f in the course of the trial of a civil action or proceeding, circumstances are brought to the attention of the trial judge which raise a substantial question as to whether a party litigant, who is not already represented by a guardian, is non compos mentis, it is the duty of the trial judge to see that proper determination of this question is made before proceeding further with the trial . . . .
Rutledge v. Rutledge, 10 N.C. App. 427, 432, 179 S.E.2d 163, 166 (1971). Further, "[w]hether the circumstances which are brought to the attention of the trial judge are sufficient to raise a substantial question as to the party's competency is a matter to be initially determined in the sound discretion of the trial judge." Id.
In the instant case, when the trial court was presented with evidence raising a substantial question as to the respondent'scompetency at the 7 August 2003 hearing, the trial court appointed a guardian ad litem. There is no evidence in the record that supports the appointment of a guardian ad litem to respondent before this time, as this was the first time evidence of respondent's mental capacity was presented to the trial court and respondent had not previously been declared incompetent. As such, respondent's assignment of error fails.
Respondent next argues that the trial court erred in finding that respondent had only made "minimal progress" since the 7 August 2003 hearing. Respondent also argues that the trial court failed to make the appropriate findings of fact mandated by N.C. Gen. Stat. §§ 7B-906 and 907.
We first note that while respondent assigned error to the finding that he only made "minimal progress," this is not in fact what respondent has argued to this Court in his brief. Instead, respondent addresses the trial court's failure to make findings under N.C. Gen. Stat. §§ 7B-906 and 907. Further, as the order under review is from a permanency planning review hearing, any arguments regarding N.C. Gen. Stat. § 7B-906, which addresses reviews of custody orders, are inapposite. See In re Harton, 156 N.C. App. 655, 658, n.2, 577 S.E.2d 334, 336, n.2 (2003). However, as we conclude that respondent's argument regarding N.C. Gen. Stat. § 7B-907 has merit, we choose to exercise our discretion and address respondent's argument.
The trial court's findings of fact lack the requisite findings mandated by N.C. Gen. Stat. § 7B-907(b). This statute providesthat the goal of the permanency planning hearing is to develop a plan "to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(b) (2003). "[O]ne of the essential aims, if not the essential aim, of [the hearing] is to reunite the parent(s) and the child, after the child has been taken from the custody of the parent(s)." In re Shue, 311 N.C. 586, 596, 319 S.E.2d 567, 573 (1984). As such, N.C. Gen. Stat. § 7B-907 requires that if a juvenile is not returned home as a result of a permanency planning hearing, the trial court must consider certain specified criteria and make "written findings regarding those that are relevant." See In re M.R.D.C., ___ N.C. App. ___, 603 S.E.2d 890 (2004); N.C. Gen. Stat. § 7B-907(b). These criteria include:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency planhearing made reasonable efforts to implement the permanent plan for the juvenile;
(6) Any other criteria the court deems necessary.
N.C. Gen. Stat. § 7B-907(b).
This Court in In re J.S., ___ N.C. App. ___, 598 S.E.2d 658 (2004), noted that "[w]hile it is true that the court is not expressly required to make every finding listed, it must still make those findings that are relevant to the permanency plans being developed for the children." Id. at ___, 598 S.E.2d at 660-61. The trial court in the instant case failed to address statutory factors numbers 1, 3 or 4. For instance, the order failed to state why it was not possible for the minor children to be returned home. See In re Ledbetter, 158 N.C. App. 281, 580 S.E.2d 392 (2003) (reversing the trial court's order as it failed to explain why it was not in the child's best interest to be returned to his mother and because it did not make the findings required by N.C. Gen. Stat. § 7B-907(b)). In the absence of these critical findings, the findings of fact in this case are not sufficient to comply with the requirements of N.C. Gen. Stat. § 7B-907(b). While the evidence in this case might have supported the determination that the trial court ultimately made, our statute requires the court to consider the factors listed in N.C. Gen. Stat. § 7B-907(b) and make the relevant findings. See Ledbetter, 158 N.C. App at 286, 580 S.E.2d at 395. Because the trial court's findings fail to comply with the statutory requirements of N.C. Gen. Stat. §7B-907(b), we remandthis matter to the trial court to make the appropriate findings of fact.
Affirmed in part; reversed and remanded in part.
Judges McGEE and BRYANT concur.
Report per Rule 30(e).