An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-959

Filed 17 June 2026

Person County, Nos. 25JA000001-720; 25JA000003-720

IN THE MATTER OF: C.C. AND M.C.

Appeal by respondent-father from order entered 14 July 2025 by Judge S. Katherine Burnette in Person County District Court. Heard in the Court of Appeals 2 June 2026.

> *Ewing Law Firm, P.C. by Robert W. Ewing for respondent-appellant father.*
>
> *Thomas L. Fitzgerald for petitioner-appellee Person County Department of Social Services.*
>
> *Winston & Strawn LLP, by Stacie C. Knight, for Guardian ad Litem.*

DILLON, Chief Judge.

Respondent-Father ("Father") appeals from an adjudication and disposition order as to his biological children Chris and Mary.[1] On appeal, Father argues the trial court erred in eliminating reunification efforts with Chris, contending the trial court's findings of fact were insufficient to support the aggravated statutory

---

[1] Stipulated pseudonym. N.C. R. App. P. 42.

circumstances or were not, otherwise, supported by competent evidence. We vacate the order and remand for more findings.

## I. Background

Father appeals the trial court's adjudication and disposition order as to his biological children, Chris and Mary, but only argues the trial court erred as to Chris. Respondent-Mother ("Mother") is the biological mother of both Chris and Mary and was a party to the trial court proceedings, but she does not appeal and has filed no brief.

Father and Mother are married and Father is the stepfather and caretaker of C.C. and F.C. Father's and Mother's history with Person County Department of Social Services ("DSS") began in 2018 and continues to this present appeal. On 3 February 2025, DSS received a report alleging an injurious living environment and substance use in the parents' home which prompted DSS to file juvenile petitions, relevant here, as to Chris and Mary. DSS obtained non-secure custody of Chris, Mary, C.C., and F.C.

DSS drug screened the four juveniles seven days after taking non-secure custody. Each child's hair sample tested positive for cocaine. Chris and Mary currently reside with their paternal grandparents.

At the adjudication and disposition hearing, Father and Mother stipulated that Chris and Mary were abused and neglected juveniles. Father visited weekly with Chris, Mary, and F.C. upon the juveniles coming into DSS custody. DSS established

a reunification plan with Father. At the adjudication and disposition hearing, however, a social worker testified she preferred reunification efforts with Father to cease with a primary plan of adoption and a secondary plan of guardianship. The juveniles' guardian ad litem ("GAL") testified to the same.

A social work expert ("Expert") testified at trial the three oldest children (not Chris) should not be returned to live with Father or Mother. The Expert did not meet with Chris due to him not being enrolled in school and thus did not make a recommendation as to his return to Father or Mother.

At the conclusion of the hearing, the trial court concluded aggravated circumstances pursuant to G.S. 7B-901(c) existed prompting the trial court to cease reunification efforts for Father as to Chris and Mary. The trial court also suspended Father's visitation. The trial court entered a permanent plan of adoption with a secondary plan of guardianship. Father appeals as to Chris only.

## II. Analysis

Father presents one argument on appeal. We address it below.

The standard of review for a trial court's dispositional choice, including the decision to eliminate reunification from a juvenile's permanent plan, is reviewed for an abuse of discretion. *In re J.M.*, 384 N.C. 584, 591 (2023) (citation omitted).

The Juvenile Code divides abuse, neglect, and dependency ("AND") proceedings into an adjudicatory and a dispositional phase. *Id.* at 592. When the trial court adjudicates a juvenile abused, neglected, or dependent the AND proceeding

continues to the dispositional phase to curate a plan for the needs of the juvenile. N.C.G.S. § 7B-900. The dispositional phase has no burden of proof rather it requires "sufficient evidence be presented to the trial court so that it can determine what is in the best interests of the child." *In re J.M.*, 384 N.C. at 592 (citing *In re Shue*, 311 N.C. 586, 597 (1984)). When, like in this case, the court removes juveniles from the parents' care, the statutory provisions for permanency planning apply. *In re J.M.*, 384 N.C. at 593.

The trial court's permanent plan must contain a primary and secondary plan. N.C.G.S. § 7B-906.2(b). Reunification may be part of a primary or secondary plan. *Id.* at § 7B-906.2(a). The trial court, however, is not required to pursue reunification when it makes written findings of fact that aggravated statutory circumstances are present pursuant to G.S. 7B-901(c). *See id.* at § 7B-906.2(b). The trial court's G.S. 7B-901(c) written findings do not have to track the statutory language verbatim, but they "must make clear that the trial court considered the evidence in light of whether reunification would be [clearly unsuccessful] or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." *In re J.M.*, 384 N.C. at 594 (citing *In re H.A.J.*, 377 N.C. 43, 49 (2021)).

The relevant statute states: "A court of competent jurisdiction determines or has determined that *aggravated circumstances* exist because the parent has committed or encouraged the commission of, or allowed the continuation of, any of

the following upon the juvenile:" "[s]exual abuse"; "[c]hronic physical or emotional abuse"; "[t]orture"; "[a]bandonment"; "[c]hronic or toxic exposure to alcohol or controlled substances that causes impairment of or addiction to the juvenile"; "[a]ny other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect." N.C.G.S. § 7B-901(c)(1) (emphasis added). Cessation of reunification efforts may also be made pursuant to G.S. 7B-901(c)(2)-(3).

General Statute 7B-901(c)(1) permits the cessation of reunification efforts when just one circumstance is present. *See id.* §7B-901(c) (stating reunification "shall not be required if the court makes written findings of fact pertaining to *any of the following*" (emphasis added)); *see In re L.N.H.*, 382 N.C. 536, 546 (2022) (citation omitted) (stating the trial court must make a written finding as to one circumstance in G.S. 7B-901(c) before eliminating reunification). An order ceasing reunification at the initial disposition does not necessarily *eliminate* reunification as a permanent plan. *See, e.g., In re C.S.L.B., C.P.R.B., S.C.R.B*, 254 N.C. App. 395, 397 (2017) ("Respondent-mother conflates removing reunification as a permanent plan for the children with ceasing reunification efforts.")

Here, Father stipulated Chris was neglected and concedes on appeal that the trial court had sufficient evidence to determine that Chris was neglected based on the abuse of Chris's older sibling, C.C. Father's challenge focuses on the dispositional phase as to the permanent plan to cease reunification.

Father argues the trial court's G.S. 7B-901(c)(1) aggravated circumstance findings as they relate to Chris are based on conduct experienced by Chris's older sibling, not Chris himself. Thus, the conclusion of law *as to Chris* that reunification efforts should cease with Father based on those findings are impermissible under G.S. 7B-901(c)(1). We agree in part and disagree in part.

Here, the trial court's July 2025 adjudication and disposition order found the following directly related to Chris: he is four years old; he is not enrolled in school; he has speech and developmental delays; Mary often acts as his caretaker; his hair sample tested for cocaine levels at 44,292 pg/mg (where levels above 10,000 pg/mg would be high for an adult); he is not potty-trained; when entering custody, he wore shoes too small for him; and he is bonded with Father. Father does not challenge these findings; thus, they are binding on appeal. *In re H.R.P.*, 297 N.C. App. 339, 344 (2024).

The trial court concluded, based on those findings, among others, the existence of aggravated circumstances under G.S. 7B-901(c)(1) of "chronic and toxic exposure to controlled substances against each of the juveniles," "abuse or neglect," and "chronic physical abuse," and subsequently eliminated reunification as a primary or secondary plan for Chris.

The conclusion of "chronic and toxic exposure to controlled substances against each of the juveniles" is supported by the evidence and findings as the children disclosed cocaine would be on the kitchen table and Chris (and the three other

juveniles) tested positive for cocaine. The trial court failed to conclude the *entire* aggravated circumstance was satisfied, however, because it failed to conclude Chris suffered from impairment or addiction as a result of the cocaine use. *See, e.g., In re G.T.*, 250 N.C. App. 50, 51, 56 (2016) (superseded on other grounds) (stating trial court's ultimate findings that newborn suffered from impairment or addiction under G.S. 7B-901(c)(1)(e) where the newborn had a rapid heartbeat and displayed withdrawal symptoms). We note, however, the evidence and unchallenged findings *may* support the conclusion that Chris' exposure to cocaine caused impairment or addiction because the findings indicate Chris has speech, development, and regulation delays.

While it is true the trial court's findings of fact do not have to be a verbatim recitation of the statutory language in G.S. 7B-901(c)(1), the trial court's conclusion as to this aggravated circumstance does not make clear that the trial court considered any impairment or addiction—as a result of the cocaine use—suffered by Chris. *See In re J.M.*, 384 N.C. at 594 (citation omitted). Thus, we must vacate the order and remand the matter with instructions for the trial court to consider whether Chris suffered impairment or addiction as a result of cocaine use.

## III.    Conclusion

We affirm the order as to Mary, as Father makes no argument on appeal concerning her. N.C. R. App. P. 28(b)(6). We, however, vacate the portion of the trial court's order ceasing reunification efforts with Chris based on the aggravated

circumstance pursuant to G.S. 7B-901(c)(1)(e) and remand with instructions for findings addressing whether Chris' exposure to cocaine caused impairment or addiction pursuant to G.S. 7B-901(c)(1)(e).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges ZACHARY and HAMPSON concur.

Report per Rule 30(e).