620 S.E.2d 49 (2005)
In re J.D.C.
No. COA04-615.
Court of Appeals of North Carolina.
October 18, 2005.
Theresa A. Boucher, Winston-Salem, for Forsyth County Department of Social Services.
Jonathan Leonard, Winston-Salem, for the guardians of the minor child.
Womble, Carlyle Sandridge & Rice, by John Still, Winston-Salem, for Guardian ad Litem.
Lisa S. Costner, for respondent.
*50 HUDSON, Judge.
On 23 May 2003, Respondent moved to regain legal and physical custody of her minor child, J.D.C., who was in legal custody of the Forsyth County Department of Social Services ("DSS") and under the guardianship of J.D.C's grandparents, Perry and Judy Smith. The Smiths filed a response and motion to dismiss. On 2 December 2003, Judge Lisa V.L. Menefee ordered that legal custody and guardianship of J.D.C. remain with the Smiths. Respondent appeals. For the reasons discussed below, we reverse and remand.
On 9 April 1999, DSS filed a petition alleging that J.D.C., then three months old, was a neglected juvenile. DSS removed J.D.C. from the home the same day. J.D.C.'s father, Daniel Clifton, had been convicted of felony child abuse of another infant son in 1996 and served eighteen months in prison for this offense. DSS also received a report that Mr. Clifton sexually abused his seven-year-old step-sister; he was convicted of First Degree Rape in 2000 and received a twenty-six year prison sentence. Respondent lived with her infant son, J.D.C., and Mr. Clifton at the time of the DSS investigation and removal.
On 12 April 1999, the court held a nonsecure custody hearing, attended by both Mr. and Mrs. Clifton. At a second non-secure custody hearing on 13 May 1999, the court placed J.D.C. in the custody of his grandmother, Judy Smith. In June 1999 the court adjudicated J.D.C. a neglected juvenile and held a dispositional hearing pursuant to N.C. Gen.Stat. § 7A-640 (1999), continuing legal custody of J.D.C. with DSS and placement with the Smiths. The court ordered Respondent to complete certain services to facilitate reunification with J.D.C. In September 1999, a periodic review hearing was held pursuant N.C. Gen.Stat. § 7B-906 and the court granted legal guardianship and custody of J.D.C. to his grandparents, the Smiths. The court held two more periodic reviews in 2000, each time continuing guardianship and custody with the Smiths, as well as delineating what the Respondent needed to do in order to regain custody. At the 17 May 2000 review, the court ordered that there be no further reviews in this case.
In May 2002, Respondent filed a motion for review requesting custody of J.D.C. She filed subsequent motions in August 2002 and May 2003, all requesting return of custody of her son, based upon her compliance with previous reunification requirements ordered by the court and upon changed circumstances. The court heard arguments regarding what standard of proof would be applied at the hearing and decided that pursuant to N.C. Gen.Stat. § 7B-600(b)(2002), "[t]he Court specifically finds that it shall be [Respondent's] burden to show that continued legal guardianship of [J.D.C.] with Perry and Judy Smith is not in the child's best interest." The case was subsequently continued and Respondent filed an amended motion in the cause where she challenged the applicability of N.C. Gen.Stat. § 600(b). However, on 29 October 2003, in the hearing on the motion for custody, the court did apply this *51 standard, requiring Respondent to show that the relationship between the guardians and J.D.C. was no longer in the best interest of the child, or that the guardians were unwilling, unable or unfit, or that they had neglected their duties as guardians. The court found that Respondent failed to make such a showing and dismissed her motion.
Respondent argues that the trial court applied the incorrect standard at the hearing on her motion. Because this is a question of law, we review it de novo. See Mohr v. Mohr, 155 N.C.App. 421, 423, 573 S.E.2d 729, 731 (2002). As mentioned, the court conducted the hearing pursuant to N.C. Gen.Stat. § 7B-600(b). N.C. Gen.Stat. § 7B-600, entitled "Appointment of guardian" confers power on the court to appoint a guardian of the person for the juvenile, to be supervised by the court, when "no parent appears in a hearing with the juvenile or when the court finds it would be in the best interests of the juvenile." N.C. Gen.Stat. § 7B-600(a) (2002). Subsection (a) also defines the scope of the guardian's authority and states that such authority will continue "until the guardianship is terminated by court order, until the juvenile is emancipated . . . or until the juvenile reaches the age of majority." Id. Subsection (b) governs termination of the guardianship as follows:
In any case where the court has determined that the appointment of a relative or other suitable person as guardian of the person for a juvenile is in the best interest of the juvenile and has also made findings in accordance with G.S. 7B-907 that guardianship is the permanent plan for the juvenile, the court may not terminate the guardianship or order that the juvenile be reintegrated into a parent's home unless the court finds that the relationship between the guardian and the juvenile is no longer in the juvenile's best interest, that the guardian is unfit, that the guardian has neglected a guardian's duties, or that the guardian is unwilling or unable to continue assuming a guardian's duties.
N.C. Gen.Stat. § 7B-600(b) (emphasis added). Thus, in applying section 7B-600(b) here, the court placed the burden of proof on Respondent to show that the guardianship should be terminated and it refused to hear evidence regarding her fitness as a parent or whether reunification was in the best interest of J.D.C. Respondent asserts that application of this standard was erroneous because no findings that guardianship was the permanent plan for J.D.C. had been made pursuant to N.C. Gen.Stat. § 7B-907. We agree.
The record reflects multiple orders continuing guardianship of J.D.C. with the Smiths, pursuant to N.C. Gen.Stat. § 7B-906. N.C. Gen.Stat. § 7B-906 (2002), entitled "Review of custody order," states in pertinent part that:
(a) In any case where custody is removed from a parent, guardian, custodian, or caretaker the court shall conduct a review hearing within 90 days from the date of the dispositional hearing and shall conduct a review hearing within six months thereafter. . . .
Id. N.C. Gen.Stat. § 7B-906(b) states that "[t]he court may not waive or refuse to conduct a review hearing if a party files a motion seeking the review." Id. This provision allows parents to seek review, as Respondent did here. It also requires that where the child has an appointed guardian and "the court has also made findings in accordance with G.S. 7B-907 that guardianship is the permanent plan for the juvenile, the court shall proceed in accordance with G.S. 7B-600(b)." Id. N.C. Gen.Stat. § 7B-907 (2002), on the other hand, governs "permanency planning hearings," and requires that:
(a) In any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody, and the hearing may be combined, if appropriate, with a review hearing required by G.S. 7B-906. The purpose of the permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time.
Id. (emphasis added).
While hearings under sections 7B-906 and 7B-907 have many similarities, they remain separate and distinct statutory requirements, *52 and one cannot suffice for the other. See In re R.T.W., 359 N.C. 539, 614 S.E.2d 489 (2005); In re B.N.H., ___ N.C.App. ___, 611 S.E.2d 888 disc. review denied, 359 N.C. 632, 615 S.E.2d 865 (2005); In re Harton, 156 N.C.App. 655, 577 S.E.2d 334 (2003). Our juvenile code balances the important, and sometimes competing interests of family reunification, permanency for the child, and the best interest of the child. See N.C. Gen. Stat § 7B-100; R.T.W., 359 N.C. at 543, 614 S.E.2d at 492. "The permanency planning process in Article 9 is meant to bring about a definitive placement plan for the abused, neglected, or dependent child." R.T.W., 359 N.C. at 546, 614 S.E.2d at 494. On the other hand,
[i]t is clear from the statutory framework of the Juvenile Code that one of the essential aims, if not the essential aim, of the dispositional hearing and the review hearing is to reunite the parent(s) and the child, after the child has been taken from the custody of the parent(s).
In re Shue, 311 N.C. 586, 596, 319 S.E.2d 567, 573 (1984) (interpreting former N.C. Gen.Stat. § 7A-657, which governed review of custody orders prior to the 1999 recodification of the Juvenile Code).
Here, the record indicates that the court held multiple review hearings pursuant to section 7B-906, but never held a hearing pursuant to section 7B-907. Although the court may have intended to combine the permanency planning and review hearings, as allowed by section 7B-907, our review of the record indicates that all hearings were designated in the court orders as periodic review hearings, pursuant to section 7B-906(a). Moreover, our careful review of the record reveals that the court never made a finding that guardianship was the permanent plan for J.D.C., as required by §§ 7B-906(b) and 7B-600(b). Indeed, in the record there are no findings regarding permanency, no orders relieving DSS of reunification efforts, and in each order the court sets forth requirements for Respondent's reunification with J.D.C. Thus, we hold that the court erred here in applying N.C. Gen.Stat. § 7B-600(b) and imposing the burden of proof on Respondent.
The North Carolina Supreme Court has held that the burden of proof in a review hearing does not rest on a parent trying to regain custody. Shue, 311 N.C. at 595-96, 319 S.E.2d at 573. In Shue, the mother sought to regain custody of her child after the court had removed the child and granted permanent custody to the father. Id. at 590, 319 S.E.2d at 570. The review hearing in Shue took place pursuant to the former N.C. Gen.Stat. § 7A-657, which governed review of custody orders prior to the 1999 recodification of the Juvenile Code. In Shue, the Court held that § 7A-657 did not place any burden of proof upon the mother and that the trial court thus erred. Id. at 597, 319 S.E.2d at 573-74. The Court noted that section 7A-657
contemplates that a child may be returned to the parent(s) from whose custody it was taken if the trial court finds sufficient facts to show that the child will receive proper care and supervision from the parent(s). However, before the custody is restored to that parent, the trial court also must find that such placement . . . is deemed to be in the best interest of the [child].
Id. at 596, 319 S.E.2d at 573 (emphasis and alterations in original).
At the time Shue was decided the requirements of section 7B-600(b) did not exist; however, we find Shue instructive where the court conducts a 7B-906(b) review and 7B-600(b) is not applicable. In enacting section 7B-600(b), we believe that the legislature intended to balance the goal of family reunification, with permanency, another important goal of the Juvenile Code. Thus, it places the burden of proof on a parent seeking review where guardianship is the permanent plan, so as not to disrupt the child's permanency, but not where the court has yet to set guardianship as the permanent plan. We hold that where there has been no finding that guardianship is the permanent plan, pursuant to N.C. Gen.Stat. § 7B-907, section 7B-600(b) is inapplicable, and the court may not impose the burden of proof upon the parent.
In Shue, the Court opined that the intent of the statute was that evidence be presented to the trial court so that it could determine *53 what was in the best interest of the minor. Id. The Court then held that the trial court should have heard evidence that the mother intended to present, because evidence determinative of the minor's best interest was critical. Id. at 597-98, 319 S.E.2d at 574. Similarly, we conclude that here the court should have conducted the hearing to
consider information from the parent, the juvenile, the guardian, any foster parent, relative, or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency that will aid in its review . . . to determine the needs of the juvenile and the most appropriate disposition.
N.C. Gen.Stat. § 7B-906(c) (2002).
Appellees argue that the requirement of a finding of guardianship as the permanent plan pursuant to § 7B-907 was not required here, as § 7B-600(b) was not the law when J.D.C. was placed under the care of guardians. The current version of the statute became effective 1 October 2000. The previous version of the statute, N.C. Gen.Stat. § 7B-600, which was in effect when J.D.C. was first adjudicated in 1999, did not include subsection (b) or the requirement that the court have made a finding that guardianship was the permanent plan pursuant to section 7B-907. However, we conclude that N.C. Gen.Stat. § 7B-600(b) was in effect at the time of the 2002 hearing here.
Appellees argue that the law in effect when the child was removed from his home should continue to apply to any related proceedings, but do not cite any law supporting this contention. "The application of a statute is deemed `retroactive' or `retrospective' when its operative effect is to alter the legal consequences of conduct or transactions completed prior to its enactment." Gardner v. Gardner, 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980). Generally, "statutes or amendments pertaining to procedure are usually held to operate retrospectively, absent a clear expression of legislative intent to the contrary." Id. at 718, 268 S.E.2d at 470. Here, we conclude that the operative effect of N.C. Gen.Stat. § 7B-600(b), and the amended portion of § 7B-906(b) which refers to § 7B-600(b), do not alter the legal consequences of conduct completed prior to their enactment, rather they are procedural in nature.
Furthermore, although the legislature did not explicitly state whether the provisions at issue here applied to reviews of cases opened prior to the effective date of the amendments, we conclude that any other interpretation would contravene the intent of the Juvenile Code.
The General Assembly's explicit desire to preserve parent-child relationships and protect children explains the fluidity of child custody proceedings. . . . These proceedings afford the trial court multiple opportunities to consider and reconsider whether a child is abused, neglected, or dependent, and if so, who should have custody. They also give parents time to correct the deficiencies that led to the child's removal. Essentially, there is no such thing as a `final' custody order, only the most recent one.
R.T.W., 359 N.C. at 545, 614 S.E.2d at 493. If the laws governing procedure in child welfare cases were frozen in time when the first petition was filed, this would create an unworkable system given the longevity and fluidity of custody proceedings. When the Juvenile Code was reformed and recodified in 1999, the changes were applicable to abuse, neglect, and dependency reports, petitions, and reviews commenced on or after the effective date of the new statutes. 1999 N.C. Sess. Laws 202. We hold that the same applies here and that the amended N.C. Gen. Stat. §§ 7B-906(b) and 7B-600(b) thus apply to any reviews commenced after 1 October 2000. Here, the review in question was held in October 2002.
Reversed and Remanded.
Judges WYNN and STEELMAN concur.