IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1214

 Filed: 15 October 2019

Alamance County, Nos. 18 JA 51, 09 JA 184

IN THE MATTER OF: J.T.S. and S.C.S.

 Appeal by Respondent-mother from order entered 17 August 2018 by Judge

Larry D. Brown, Jr. in Alamance County District Court. Heard in the Court of

Appeals 3 September 2019.

 Jamie L. Hamlett for Petitioner-appellee Alamance County Department of
 Social Services.

 Deputy Parent Defender Annick Lenoir-Peek and Parent Defender Wendy C.
 Sotolongo for Respondent-appellant.

 Parker Poe Adams & Bernstein LLP, by Fern A. Paterson, for guardian ad
 litem.

 McGEE, Chief Judge.

 Respondent, the mother of J.T.S. and S.C.S., appeals from a permanency

planning order in which the trial court eliminated reunification as a permanent plan

and awarded guardianship of J.T.S. and S.C.S. to their maternal grandparents.

Respondent contends the trial court erred in: waiving review hearings, ordering a

restrictive visitation schedule without considering costs, and eliminating

reunification as a concurrent permanent plan. We affirm the trial court’s order in

part, and vacate and remand in part.
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 Factual and Procedural History

 Guilford County Child Protective Services received a report on 29 August 2017,

alleging J.T.S. and S.C.S. were “being exposed to an injurious environment due to

their parents’ substance abuse.” At that time, the children resided with Respondent

and J.T.S.’s father1 (“father”) (collectively the “parents”) in Burlington, in a house

provided by the children’s maternal grandparents (the “grandparents”). The matter

was transferred the next day to the Alamance County Department of Social Services

(“DSS”).

 Respondent left J.T.S. and S.C.S. in the care of the grandparents on 7

September 2017, following allegations that father had held Respondent and the

children hostage at their home the previous day. Respondent entered into a

Temporary Parental Safety Agreement on 26 October 2017, wherein Respondent

agreed to allow the children to reside with the grandparents, to refrain from being

under the influence of mood-altering substances (unless prescribed by her doctor),

and to comply with a visitation arrangement, which allowed for supervised visitation

with the children. Thereafter, DSS transferred the case to in-home services.

 The parents failed to pay the grandparents rent for the Burlington house and

the grandparents evicted Respondent and father in September or October of 2017.

From December 2017 to February 2018, DSS social workers sought to meet with

 1 The parental rights of S.C.S.’s father have been previously terminated.

 -2-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

Respondent regarding her case but they were unable to locate her. The grandparents

expressed concerns to DSS social workers in March of 2018 that Respondent was

using illegal drugs and alerted them that, after being evicted, the parents broke back

into the home in Burlington and were currently residing there. DSS social workers

successfully contacted Respondent via text message, and Respondent agreed to meet

with them on 13 March 2018.

 At the scheduled meeting, Respondent confirmed she was still using illegal

drugs with father, and track marks were observed on her arms, chest, and hands.

Respondent admitted she had been assaulted by father on multiple occasions, but

denied that he inflicted the visible bruises on her arm. Upon learning father was

waiting for Respondent in the parking lot, a social worker asked father if he would

speak with them. Father agreed to speak with DSS and, despite the visible track

marks on his arm, he denied using illegal drugs. At the request of DSS, the parents

submitted to drug tests; father did not produce enough of a specimen to be tested and

Respondent tested positive for cocaine and amphetamines.

 Respondent also told the social workers that the grandparents frequently

interfered with her ability to see her children. As a result, a nine-day visitation plan

was put in place, allowing for supervised visits and phone calls between Respondent

and the children. Respondent, however, “failed to maintain this schedule,” and saw

her children only a few times. DSS social workers attempted to contact Respondent

 -3-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

and father daily by phone, unannounced home visits at various residences and hotels,

and visits to stores where the parents were known to shop. DSS was unable to reach

the parents.

 DSS filed petitions on 21 Match 2018 alleging the children were “neglected

juveniles” as defined by N.C. Gen. Stat. § 7B-101(15). Respondent and the

grandparents attended a child and family team meeting on 11 April 2018, and a case

plan was established. The case plan “sought to address [Respondent’s] mental health,

substance abuse, housing instability, lack of employment, parenting style, and the

medical/mental health needs of the minor children.”

 An adjudication hearing and a disposition hearing were held on 16 May 2018.

At the start of the hearing, the trial court adjudicated the children as “neglected

juveniles” based on stipulations made by the parties and information received from

counsel. The trial court moved on to the disposition hearing, and entered reports

from DSS and the Guardian ad Litem (“GAL”) into evidence. The trial court

announced from the bench it was adopting the recommendations of DSS and the GAL

regarding supervised visitation between Respondent and the children.

 The trial court heard arguments from the parties as to whether a permanency

planning hearing could immediately follow a disposition hearing. Thereafter, the

trial court proceeded with the permanency planning hearing for the rest of the day

and the following day. A conflict in the court’s schedule prevented the matter from

 -4-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

concluding on 17 May and the permanency planning hearing was continued to 18

July 2018.

 At the end of the day on 17 May, the trial court announced from the bench it

was awarding Respondent visitation with the children for one hour per week at the

Family Abuse Services Center. The oral ruling was memorialized in a supervised

visitation order, entered 18 May 2018. An adjudication and disposition order was

entered 23 May 2018. The order directed Respondent and father to participate in the

services ordered by the trial court. Respondent was ordered to: contact Family Abuse

Services to enroll in the supervised visitation program, complete a substance abuse

assessment and mental health assessment and comply with any recommendations,

submit to random drug screens, take medication as prescribed, engage in services to

improve parenting skills and procure employment, apply for a specified number of

jobs per week, complete a specified number of housing applications per week, and

participate in the children’s medical, dental, and mental health appointments.

 In preparation for the 18 July 2018 hearing, DSS prepared a written

addendum to a previously-drafted report. In the addendum, DSS recommended

“supervised visits between the minor children and the Respondent Mother be

suspended due to her failure to take advantage of and/or engage in the offered

visitation, as well as her failure to adequately address the issues of concern that

necessitated the kinship arrangement and court involvement.” Respondent,

 -5-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

Respondent’s attorney, father’s attorney, the grandparents, a DSS social worker, and

the GAL were present at the 18 July 2018 hearing. At the start of the hearing, DSS’s

counsel explained the parties had “reached a resolution” which altered DSS’s

recommendation contained in the addendum. Counsel for DSS addressed the terms

of the “resolution” during direct examination of the social worker:

 [DSS’S COUNSEL]: Is it your understanding that the
 respondent mother is willing to consent at this point to
 guardianship being granted to her parents if the
 department and GAL revised their recommendations in
 regards [sic] to suspension of her visitation?

 [DSS SOCIAL WORKER]: Yes.

 Thus, DSS agreed to revise its recommendation to suspend Respondent’s

visitation rights and Respondent consented to guardianship of the children with the

grandparents. The GAL adopted DSS’s revised recommendation. The social worker

read the terms of DSS’s revised recommendation in open court:

 That the respondent mother can continue to have visitation
 once a week for one hour supervised by Family Abuse
 Services. That if the respondent mother misses two
 consecutive visits or two out of the five visits . . . the
 visitation will be suspended and will not be reinstated until
 further order of the Court. That prior to visitation
 beginning the respondent mother shall obtain an updated
 CCA including mental health and substance abuse
 assessment and submit to a drug screen. She shall enroll
 in treatment as recommended by the CCA. The respondent
 mother must admit documentation to Family Abuse
 Services verifying that she’s obtained such and is enrolled
 in treatment with a state approved treatment program. If
 the respondent mother appears at visitation and appears

 -6-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 to be under the influence the visitation shall be terminated
 and there should be no further visitation until further
 order of the Court.

 The trial court then addressed the conditions agreed upon by the parties and

sought confirmation that Respondent understood the terms:

 THE COURT: And, it[’]s my understanding attorney Skeen
 that your client is going to consent at this point to
 guardianship being placed with the grandparents so long
 as that modification is changed in relation to being able to
 have visitation once a week at the Family Justice Center?

 [RESPONDENT’S COUNSEL]: That’s correct Your Honor.

 THE COURT: But your client does understand though that
 if she fails to provide the necessary criminal backgrounds,
 the necessary documentation, and setting up at Family
 Abuse Services and following all of their requirements that
 that is not going to be the fault of the grandparents. She
 will not be able to go and have visitation. She understands
 that?

 [RESPONDENT’S COUNSEL]: Yes Your Honor.

 DSS’s recommendation was accepted by the court without objection. Later in

the hearing, the trial court confirmed Respondent’s understanding that

“[r]eunification stops today.” Respondent’s counsel responded, “[r]ight, she knew that

but, in doing so will allow her to have increased visitation[.]”

 The trial court entered a guardianship order on 15 August 2018. The trial

court entered a permanency planning order on 17 August 2018, which waived review

hearings, eliminated reunification from the permanent plan, and provided for

 -7-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

Respondent’s visitation with the children pursuant to the recommendations of DSS.

Additionally, the trial court entered a supervised visitation order, also reflecting the

recommendation of DSS, on 17 August 2018. Respondent appeals from the

permanency planning order.

 Analysis

 I. Waiver of Review Hearings

 Respondent asserts the trial court erred in waiving review hearings pursuant

to N.C. Gen. Stat. § 7B-906.1(n) because, at the time of the permanency planning

hearing, the children had not resided with the grandparents for a continuous “period

of at least one year.” We agree.

 As an initial matter, we address DSS’s contention that Respondent failed to

properly preserve this argument. Rule 10(a)(1) of the North Carolina Rules of

Appellate Procedure provides, “[i]n order to preserve an issue for appellate review, a

party must have presented to the trial court a timely request, objection, or motion,

stating the specific grounds for the ruling the party desired the court to make if the

specific grounds were not apparent from the context.” N.C. R. App. P. 10(a)(1) (2017).

However, “when a trial court acts contrary to a statutory mandate and a defendant

is prejudiced thereby, the right to appeal the court’s action is preserved,

notwithstanding [the] defendant’s failure to object at trial.” State v. Ashe, 314 N.C.

28, 39, 331 S.E.2d 652, 659 (1985). “Accordingly, because [Respondent] contends that

 -8-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

the trial court erred in its interpretation and application of statutory provisions, we

review the merits of [Respondent’s] argument notwithstanding [her] failure to object

at trial.” State v. Jamison, 234 N.C. App. 231, 237, 758 S.E.2d 666, 671 (2014).

 “This Court’s review of a permanency planning order is limited to whether

there is competent evidence in the record to support the findings and whether the

findings support the conclusions of law.” In re P.O., 207 N.C. App. 35, 41, 698 S.E.2d

525, 530 (2010) (citation omitted). “Questions of statutory interpretation are

questions of law, which are reviewed de novo by an appellate court.” In re Proposed

Assessments v. Jefferson-Pilot Life Ins. Co., 161 N.C. App. 558, 559, 589 S.E.2d 179,

180 (2003).

 N.C. Gen. Stat. § 7B-906.1 applies to review and permanency planning

hearings and requires that a review hearing be held “at least every six months” after

the initial permanency planning hearing “to review the progress made in finalizing

the permanent plan for the juvenile, or if necessary, to make a new permanent plan

for the juvenile.” N.C. Gen. Stat. § 7B-906.1(a) (2017). Subsection (n) allows the court

to waive further hearings “if the court finds by clear, cogent, and convincing evidence

each of the following:”

 (1) The juvenile has resided in the placement for a period of
 at least one year.

 (2) The placement is stable and continuation of the
 placement is in the juvenile’s best interests.

 -9-
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 (3) Neither the juvenile’s best interests nor the rights of
 any party require that review hearings be held every six
 months.

 (4) All parties are aware that the matter may be brought
 before the court for review at any time by the filing of a
 motion for review or on the court’s own motion.

 (5) The court order has designated the relative or other
 suitable person as the juvenile’s permanent custodian or
 guardian of the person.

N.C.G.S. § 7B-906.1(n) (emphasis added). “The trial court must make written

findings of fact satisfying each of the enumerated criteria . . . , and its failure to do so

constitutes reversible error.” In re P.A., 241 N.C. App. 53, 66, 772 S.E.2d 240, 249

(2015).

 In the permanency planning order, the trial entered conclusion of law # 32:

“The [c]ourt finds by clear, cogent, and convincing evidence[] that the juveniles have

resided in the placement for a period of at least one year[.]” In support of this

conclusion, the trial court made the following pertinent findings of fact:

 14. Both minor children are in a kindship placement with
 their maternal grandparents[.] They have been placed
 with their grandparents since October 2017 and have
 transitioned well into their care. [S.C.S.] has resided with
 his maternal grandparents for many years of his life and is
 accustomed to being in his grandparents’ care. [J.T.S.]
 spent the first six months of his life in the home of his
 maternal grandparents. He also spent some weekends
 with them over the last several years and has adjusted well
 to being in their full-time care.

 ....

 - 10 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 37. That the Court waive the holding of regular review and
 permanency planning hearings in that the minor child,
 [J.T.S.], has resided with his maternal grandparents for at
 least one year and the minor child, [S.C.S.], has resided
 with his maternal grandparents for more than five years[.]

 Respondent contends the above findings of fact do not support conclusion of

law # 32 because the “period of at least one year” must be continuous and

uninterrupted. DSS and the GAL assert that, pursuant to the plain language of

N.C.G.S. § 7B-906.1(n)(1), the children were not required to reside with the

grandparents for a continuous or unbroken “period of at least one year.” As a result,

they argue, the findings of fact establishing the various times each child resided with

the grandparents support conclusion of law # 32.

 Respondent’s appeal presents a question regarding how the “period of at least

one year,” as it is used in N.C.G.S. § 7B-906.1(n)(1), is calculated. In addressing this

argument, we adhere to the following principles of statutory construction: “The

paramount objective of statutory interpretation is to give effect to the intent of the

legislature.” In re Proposed Assessments, 161 N.C. App. at 560, 589 S.E.2d at 181

(citation omitted). “To achieve this end, the court should consider the language of the

statute or ordinance, the spirit of the act and what the act seeks to accomplish.”

Williams v. Alexander Cnty. Bd. of Educ., 128 N.C. App. 599, 603, 495 S.E.2d 406,

408 (1998) (internal quotation marks and citation omitted). Moreover, “words and

phrases of a statute may not be interpreted out of context, but must be interpreted as

 - 11 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

a composite whole so as to harmonize with other statutory provisions and effectuate

legislative intent, while avoiding absurd or illogical interpretations[.]” Fort v. Cnty.

of Cumberland, 218 N.C. App. 401, 407, 721 S.E.2d 350, 355 (2012) (internal

quotation marks and citations omitted).

 Pursuant to canons of statutory interpretation, this Court looks first to the

plain language of N.C.G.S. § 7B-906.1(n)(1). “[A] period of at least one year” is

ambiguous as to whether the period is to be tallied on a continuous or cumulative

basis. Therefore, we look to the purposes of the juvenile code as a whole to discern

the intent of N.C.G.S. § 7B-906.1(n)(1).

 N.C. Gen. Stat. § 7B-100 sets forth the purposes of the juvenile code:

 This Subchapter shall be interpreted and construed so as
 to implement the following purposes and policies:

 (1) To provide procedures for the hearing of juvenile cases
 that assure fairness and equity and that protect the
 constitutional rights of juveniles and parents;

 (2) To develop a disposition in each juvenile case that
 reflects consideration of the facts, the needs and
 limitations of the juvenile, and the strengths and
 weaknesses of the family.

 (3) To provide for services for the protection of juveniles by
 means that respect both the right to family autonomy and
 the juveniles’ needs for safety, continuity, and permanence;
 and

 (4) To provide standards for the removal, when necessary,
 of juveniles from their homes and for the return of juveniles
 to their homes consistent with preventing the unnecessary

 - 12 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 or inappropriate separation of juveniles from their parents.

 (5) To provide standards, consistent with the Adoption and
 Safe Families Act of 1997, P.L. 105-89, for ensuring that
 the best interests of the juvenile are of paramount
 consideration by the court and that when it is not in the
 juvenile’s best interest to be returned home, the juvenile
 will be placed in a safe, permanent home within a
 reasonable amount of time.

N.C. Gen. Stat. § 7B-100 (2017).

 “The [j]uvenile [c]ode . . . must be interpreted and construed so as to implement

these goals and policies.” In re Eckard, 144 N.C. App. 187, 197, 547 S.E.2d 835, 841

(2001). To understand the goals and policies that support waiving review hearings,

we look to N.C.G.S. § 7B-906.1 to glean the purpose of a permanency planning hearing

and the purpose of a review hearing.

 The trial court’s purpose in holding a permanency planning hearing is to

develop a plan “to achieve a safe, permanent home for the juvenile within a

reasonable period of time.” N.C.G.S. § 7B-906.1(g). Subsequently, the trial court

conducts review hearings to “review the progress made in finalizing the permanent

plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile.”

N.C.G.S. § 7B-906.1(a). The trial court can waive review hearings by making the

requisite findings enumerated in N.C.G.S. § 7B-906.1(n). Therefore, the waiver

reflects a determination on behalf of the trial court that scheduled review hearings

 - 13 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

are not necessary, at that time, “to achieve a safe, permanent home for the juvenile

within a reasonable period of time.” N.C.G.S. § 7B-906.1(g).

 N.C.G.S. § 7B-906.1(n) reflects the juvenile code’s specific goals of providing

services that respect “the juveniles’ needs for safety, continuity, and permanence” and

placing juveniles in a “safe, permanent home.” N.C.G.S. § 7B-100(3), (5). These goals

are reflected in the findings the trial court is required to make pursuant to N.C.G.S.

§ 7B-906.1(n) including, inter alia, “[t]he placement is stable and continuation of the

placement is in the juvenile’s best interests”; “[t]he court order has designated the

relative or other suitable person as the juvenile’s permanent custodian or guardian of

the person”; and “[n]either the juvenile’s best interests nor the rights of any party

require that review hearings be held every six months.” N.C.G.S. § 7B-906.1(n) (2)-

(3), (5) (emphasis added). Consistent with these goals, we interpret the language “for

a period of at least one year” to mean a continuous, uninterrupted period of at least

twelve months.

 In support of this position, we note the evidence gleaned from a continuous

period of at least one year would provide the trial court the best evidence of stability

and permanency. A child’s placement for twelve consecutive months demonstrates

commitment on behalf of the “permanent custodian or guardian of the person” to the

child’s placement. Moreover, this interpretation is consistent with the policy of the

juvenile code to “provide for services” that respect “the right to family autonomy[.]”

 - 14 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

N.C.G.S. § 7B-100(3). When a child has resided outside the home for a continuous

period of at least one year, the parent theoretically has been afforded the opportunity

to demonstrate her progress during at least two review hearings. In contrast, when

a child has lived outside the home for various short periods of time throughout his

life, the parent has not necessarily been provided the same opportunity, afforded by

review hearings, to demonstrate her progress or present evidence of changed

conditions over the course of a year.

 Additionally, measuring “a period of at least one year” by an aggregation of

interrupted, sporadic placements could lead to absurd results. Under this

interpretation, N.C.G.S. § 7B-906.1(n)(1) could be satisfied in the following situation:

a one-year-old child was placed with his aunt for eleven months, was placed with his

mother for ten consecutive years and, at age twelve, was placed with his aunt for

three months. In that scenario, the child’s placement with his aunt for a three-month

period preceding a permanency planning hearing would not provide evidence of a

permanent and stable placement, and the waiver of review hearings could lead to the

“unnecessary or inappropriate separation of [the] juvenile[] from [his] parent[].”

N.C.G.S. § 7B-100(4). Therefore, construing N.C.G.S. § 7B-906.1(n)(1) to allow for

the waiver of review hearings when a child has resided outside the parent’s home for

a short period of time would be inconsistent with the objective of review hearings.

 - 15 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 DSS and the GAL analogize the issue to this Court’s holding in In re T.P., 217

N.C. App. 181, 718 S.E.2d 716 (2011). In T.P., the trial court waived future review

hearings pursuant to N.C.G.S. § 7B-906(b),2 which required the trial court find “[t]he

juvenile has resided with a relative . . . for a period of at least one year.” Id. at 186,

718 S.E.2d at 720. Although the child had resided with his maternal grandparents

for a period of time prior to residing with his paternal grandparents for a period of

time, this Court upheld the trial court’s waiver of review hearings because the child

“ha[d] remained with a relative (maternal and paternal grandparents) for more than

one year.” Id. at 187, 718 S.E.2d at 720. DSS contends “if the twelve-month period

can be calculated across different relatives, it can be calculated with one set of

relatives across the life of the children.” We disagree with this assertion for two main

reasons.

 First, the question of how to measure “a period of at least one year” was not

addressed by this Court, as there was no dispute as to how long the juvenile had been

placed outside the home. Second, T.P. was decided under a provision of a predecessor

statute, which contained different language than N.C.G.S. § 7B-906.1(n)(1).

Specifically, the provision that the “juvenile has resided with a relative or has been

in the custody of another suitable person” in N.C.G.S. § 7B-906(b) now reads “[t]he

juvenile has resided in the placement[.]” N.C.G.S. § 7B-906.1(n)(1). We cannot say

 2 N.C. Gen. Stat. § 7B-906 (2009) was repealed by Session Laws 2013-129, s. 25, effective 1
October 2013, and replaced with N.C.G.S. § 7B-906.1.

 - 16 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

whether this Court would have reached the same result in T.P. under N.C.G.S. § 7B-

906.1(n)(1). Because this issue is not before us, we limit our discussion of T.P. to

distinguishing its relevancy in regard to the present case.

 Finally, we note that our interpretation is consistent with this Court’s

treatment of N.C.G.S. § 7B-906.1(n)(1). In In re P.A., 241 N.C. App. at 54-56, 772

S.E.2d at 242-43, a juvenile was placed with his father and his father’s girlfriend in

September 2011, was placed with only his father’s girlfriend in April 2013, was placed

with his mother in October 2013, and was placed back with his father’s girlfriend in

January 2014. In addressing whether the trial court appropriately waived review

hearings pursuant to N.C.G.S. § 7B-906.1(n), this Court noted “it would have been

impossible for the trial court to make a finding as to the first criterion that ‘[t]he

juvenile has resided in the placement for a period of at least one year’ since [the

juvenile] had been placed with [the father’s girlfriend] for only about 60 days at the

time of the March 2014 hearing.” Id. at 66, 772 S.E.2d at 249. Accordingly, although

the juvenile had resided with his father’s girlfriend at different times throughout his

life, the only period of time considered relevant by this Court in regard to N.C.G.S. §

7B-906.1(n)(1) was the two-month period preceding the permanency planning

hearing.

 In sum, recognizing that “[o]ur juvenile code balances the important, and

sometimes competing interests of family reunification, permanency for the child, and

 - 17 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

the best interest of the child[,]” In re J.D.C., 174 N.C. App. 157, 161, 620 S.E.2d 49,

52 (2005), we interpret the language “for a period of at least one year” in N.C.G.S. §

7B-906.1(n)(1) to require an uninterrupted period of at least twelve months.

Therefore, we hold the trial court’s conclusion of law was not supported by adequate

findings of fact. Accordingly, we vacate the portion of the permanency planning order

waiving future review hearings and remand to the trial court.

 II. Visitation Schedule

 Respondent contends the trial court erred by failing to consider the costs

associated with supervised visitation, entering contradictory provisions as to the

duration and frequency of her visitation, requiring her to complete additional

requirements as a prerequisite to visitation, and delegating its judicial discretion to

Family Abuse Services. We agree the trial court erred by failing to make a

determination regarding costs and by entering contradictory provisions as to the

frequency of Respondent’s visitation. However, Respondent has not preserved for

appellate review her arguments that the trial court erred by placing requirements on

her visitation and by delegating its judicial authority.

 First, Respondent contends the trial court erred by ordering supervised

visitation without addressing its cost, who would bear the expense, or Respondent’s

ability to pay said expense.

 - 18 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 As an initial matter, we address whether this issue has been preserved for

appellate review. This Court has held a respondent-mother’s failure to object to the

trial court’s award of visitation at the discretion of a third party “is not a failure to

preserve the[] issue[] for appeal” because “a party [is not] required to object at the

hearing or raise a motion in order to preserve this type of question for appellate

review.” In re E.C., 174 N.C. App. 517, 520, 621 S.E.2d 647, 650 (2005) superseded

on other grounds by statute as stated in In re T.H., 245 N.C. App. 131, 781 S.E.2d 718,

2016 WL 224188, at *5-7 (2016) (unpublished). Therefore, in order to preserve this

issue for appellate review, Respondent was not required to object to the trial court’s

failure to consider the costs associated with supervised visitation.

 N.C. Gen. Stat. § 7B-905.1 provides, in pertinent part:

 (a) An order that removes custody of a juvenile from a
 parent, guardian, or custodian or that continues the
 juvenile’s placement outside the home shall provide for
 appropriate visitation as may be in the best interests of the
 juvenile consistent with the juvenile’s health and safety.
 The court may specify in the order conditions under which
 visitation may be suspended.

 ....

 (c) If the juvenile is placed or continued in the custody or
 guardianship of a relative or other suitable person, any
 order providing for visitation shall specify the minimum
 frequency and length of the visits and whether the visits
 shall be supervised. The court may authorize additional
 visitation as agreed upon by the respondent and custodian
 or guardian.

 - 19 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

N.C. Gen. Stat. § 7B-905.1(a), (c) (2017).

 Our Supreme Court has held that, without findings addressing whether a

respondent-parent “was able to pay for supervised visitation once ordered[, o]ur

appellate courts are unable to determine if the trial court abused its discretion by

requiring as a condition of visitation that visits with the children be at [the

respondent-parent’s] expense.” In re J.C., 368 N.C. 89, 772 S.E.2d 465 (2015) (per

curiam). In the present case, the trial court awarded Respondent weekly supervised

visitation with her children at the Family Abuse Services Center; however, the trial

court made no findings as to the costs associated with supervised visitation, who

would bear the responsibility of paying such costs, or Respondent’s ability to pay the

costs. This scenario has been squarely addressed by this Court in In re Y.I., ___ N.C.

App. ___, 822 S.E.2d 501 (2018):

 In this case, the trial court did not determine what costs, if
 any, would be associated with conducting supervised
 visitation at Gaston County Visitation Center or Carolina
 Solutions. Given that the trial court relieved DSS of any
 further responsibility in the case, it appears likely that [the
 r]espondent-mother would be required to pay for visitation,
 although the court failed to specify who was to bear any
 such expense. In the event the trial court intended for [the
 r]espondent-mother to bear the cost of visitation, the court
 failed to determine whether [the r]espondent-mother had
 the ability to pay.

Id. at ___, 822 S.E.2d at 506. Therefore, as we did in Y.I.,

 we vacate the portion of the permanency planning order
 regarding visitation and remand for additional findings of

 - 20 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 fact, addressing whether Respondent[] is to bear any costs
 associated with conducting visits at the supervised
 visitation centers, and if so, whether Respondent[] has the
 ability to pay those costs.

Id. at ___, 822 S.E.2d at 506.

 Respondent next contends the visitation plan in the permanency planning

order “is contradictory as to how long and how often [she] can visit her sons.” In the

permanency planning order, one decretal paragraph provides Respondent’s visitation

“should be at a minimum of once a week with both children for two hours,” whereas

a different decretal paragraph provides Respondent “can continue to have visitation

once a week for one hour[.]” Based on the revised recommendation of DSS and the

terms of the visitation order, entered 17 August 2018, it appears the trial court

intended to grant Respondent visitation with her children for one hour once a week.

However, in an abundance of caution, we vacate this portion of the order and remand

to the trial court for clear instructions regarding the frequency and duration of the

visitation awarded to Respondent.

 Finally, Respondent contends the trial court erred by imposing conditions as a

prerequisite to visiting her children and by delegating discretion over visitation to

Family Abuse Services.

 We first address whether this argument was preserved for appellate review.

We acknowledge, as discussed above, that by not objecting to the trial court’s failure

to consider visitation costs, Respondent did not “fail[] to preserve the[] issue[] for

 - 21 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

appeal.” In re E.C., 174 N.C. App. at 520, 621 S.E.2d at 650. In that instance, the

costs associated with supervised visitation were neither discussed at the hearing nor

consented to by Respondent. In contrast, at the 18 July 2018 hearing, the trial court

squarely addressed the conditions of visitation, including the role of Family Abuse

Services, and Respondent expressly agreed to the terms.

 This Court has addressed preservation in this specific context in the

unpublished opinion In re R.C., 196 N.C. App. 789, 675 S.E.2d 720, 2209 WL 1200874

(2009) (unpublished). There, during the permanency planning hearing, the

“respondent’s counsel specifically advised the court that [the] respondent ‘does not

have a problem’ with the trial court’s adopting YFS’s recommendation as to [the

juvenile] that custody be vested in R.C.” Id. at *2. This Court held, “[b]ecause [the]

respondent consented to the grant of [the juvenile’s] custody to R.C. and to divesting

YFS of custody over [the juvenile], [the] respondent did not properly preserve for

appeal her contentions regarding the permanency planning order as it pertained to

[the juvenile]. Simply put, she invited any error.” Id. at *3.

 In the present case, Respondent and DSS entered into an agreement prior to

the 18 July 2018 hearing: Respondent consented to “guardianship being granted to

her parents if [DSS] and GAL revised their recommendations in regards [sic] to

suspension of her visitation[.]” In addition to providing each party a typed copy of

DSS’s recommendation, a social worker read the recommendation in open court:

 - 22 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 That the respondent mother can continue to have visitation
 once a week for one hour supervised by Family Abuse
 Services. That if the respondent mother misses two
 consecutive visits or two out of the five visits . . . the
 visitation will be suspended and will not be reinstated until
 further order of the Court. That prior to visitation
 beginning the respondent mother shall obtain an updated
 CCA including mental health and substance abuse
 assessment and submit to a drug screen. She shall enroll
 in treatment as recommended by the CCA. The respondent
 mother must admit documentation to Family Abuse
 Services verifying that she’s obtained such and is enrolled
 in treatment with a state approved treatment program. If
 the respondent mother appears at visitation and appears
 to be under the influence the visitation shall be terminated
 and there should be no further visitation until further
 order of the Court.

 Respondent did not object to the terms of DSS’s revised recommendation on

visitation. Indeed, the trial court specifically addressed the terms of DSS’s

recommendation with Respondent’s attorney:

 THE COURT: But your client does understand though that
 if she fails to provide the necessary criminal backgrounds,
 the necessary documentation, and setting up at Family
 Abuse Services and following all of their requirements that
 that is not going to be the fault of the grandparents. She
 will not be able to go and have visitation. She understands
 that?

 [RESPONDENT’S COUNSEL]: Yes Your Honor.

 ....

 THE COURT: And, would you like the Court to accept
 [DSS’s] recommendations?

 [RESPONDENT’S COUNSEL]: We do accept that she be –

 - 23 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 the modification where she’d be allowed to have those visits
 and we thank the Court for the opportunity to continue the
 visits.

 DSS’s revised recommendation, as agreed upon by the parties and read in open

court, was memorialized in the permanency planning order. Therefore, because

Respondent consented to the terms of DSS’s revised recommendation regarding the

conditions required for visitation and the role of Family Abuses Services, she “did not

properly preserve for appeal [these] contentions regarding the permanency planning

order[.]” In re R.C., 2009 WL 1200874, at *3.

 III. Concurrent Plan of Reunification

 Respondent contends the trial court erred by not making reunification a

concurrent permanent plan. Respondent has not preserved this issue for appellate

review.

 As discussed above, Respondent agreed to guardianship of her children with

the grandparents in exchange for visitation with her children. The trial court

expressly addressed this issue at the hearing:

 THE COURT: And, it[’]s my understanding attorney Skeen
 that your client is going to consent at this point to
 guardianship being placed with the grandparents so long
 as that modification is changed in relation to being able to
 have visitation once a week at the Family Justice Center?

 [RESPONDENT’S COUNSEL]: That’s correct Your Honor.

 - 24 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

 Subsequently, the trial court stated, “[r]eunification stops today.”

Respondent’s counsel responded, “[r]ight, she knew that but, in doing so will allow her

to have increased visitation[.]” Respondent did not object to the elimination of

reunification as a permanent plan. The trial court explicitly stated that reunification

would cease on the day of the hearing, and Respondent’s counsel acknowledged

Respondent’s understanding of that fact. Therefore, Respondent consented to the

cessation of reunification efforts in order to retain visitation rights. As a result, she

has waived review of this issue on appeal.

 Conclusion

 In sum, because we interpret N.C.G.S. § 7B–906.1(n)(1) as requiring a

continuous, unbroken “period of at least one year,” we vacate the portion of the

permanency planning order waiving review hearings and remand the matter for

further proceedings. We also vacate the portion of the permanency planning order

pertaining to visitation, and remand for the trial court to make findings as to the cost

of supervised visitation, the person responsible for paying the cost and, if that person

is Respondent, her ability to pay the cost. Additionally, on remand, we instruct the

court to state its clear instructions regarding the duration and frequency of

Respondent’s visitation rights. The remainder of the permanency planning order is

affirmed.

 AFFIRMED IN PART, VACATED IN PART AND REMANDED.

 - 25 -
 IN RE: J.T.S. & S.C.S.

 Opinion of the Court

Judges BRYANT and BROOK concur.

 - 26 -